LITTLE ROCK TRACTION & ELECTRIC COMPANY *v.* WALKER.

Opinion delivered March 19, 1898.

1.  STREET RAILWAY—LIABILITY FOR MALICIOUS PROSECUTION BY EMPLOYEE.—A street railway company is not liable for the acts of its conductor in maliciously prosecuting a passenger for violating a city ordinance making it a misdemeanor for any person to ride on a street car without paying fare, in the absence of authority from the company to the conductor to institute such prosecution. (Page 148.)

2. PRINCIPAL AND AGENT—WHEN AUTHORITY NOT IMPLIED.—The fact that a street car conductor has authority to put people off his car for refusing to pay fare will not justify the inference that he also has authority to arrest and prosecute them therefor.    (Page 149.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*Rose, Hemingway & Rose,* for appellant.

In an action for malicious prosecution, both malice and want of probable cause are essential elements.    33 Ark. 316. An agent of a corporation can bind his principal within only the real or apparent scope of his authority.    Hence, to hold a principal liable in a suit for malicious prosecution by an agent, express authority of such agent to institute the criminal prosecution complained of must be shown.    78 Md. 394; 28 Atl. 615; 34 Am. Rep. 311; S. C. 51 Md. 290; 15 Fed. 200; 39 N. Y. 381; 6 Exch. 314; 7 Exch. 36; 2 L. R. Q. B. Cases, 534; L. R. 5 C. P. 445; L. R. 6 Q. B. 65; 1 Biddle, Ins. § 118.

*J. H. Harrod,* for appellee.

The questions of malice and want of probable cause were for the jury, and their verdict is conclusive thereon.    To hold a corporation responsible for the acts of its agents, it is not necessary to show express authority.    The authority may be implied.    122 U. S. 597; Pierce, Railroads, 279; 98 N. C. 34; 10 S. W. 744; Thomp. Corp. § 6312.    The principal is liable for the acts of his agent if they are within the real or apparent scope of his authority.    It is not a question of whether the agent was of high or low degree.    78 Ala. 85; Mechem, Agency, § 311; 9 Philad. 189; 15 Nev. 176.    A corporation may be held liable for assault and battery, false imprisonment or malicious prosecution.    32 N. J. L. 328; 37 Ala. 560; 32 N. J. L. 334; 130 Mass. 443; 15 Nev. 167; Cook, Corp. Law (2 Ed.), § 698; 133 Mass. 563; 47 N. Y. 274; 3 S. E. 923; 93 Cal. 562; 90 N. Y. 77.

BUNN, C. J.    This is a suit for malicious prosecution by Albert Walker, the appellee, against the street car company of Little Rock.    Judgment for plaintiff, and the defendant appeals.

Walker was a passenger on one of defendant's cars, known as the "West Ninth car," running from the west on Ninth street to the junction of the several car lines at the crossing of Ninth and Main streets, having paid his fare. When his car arrived at the junction, and was stopped, as usual, on the east track on Main street, and just north of Ninth street, plaintiff alighted from the same; and he took his seat at the near-by corner of the sidewalk to await the arrival of the Fifteenth street car, coming from the south along the east track on Main, and going to the union depot. While at this corner, plaintiff was engaged in conversation with a woman, subsequently a witness in the case, and the Fifteenth street car came up, and stopped the usual distance—fifteen or twenty feet—in rear of the Ninth street car on the same track as aforesaid. Then the Ninth street car moved off down Main street, and in the usual interval of time the Fifteenth street car followed. The plaintiff neglected to board the latter, as he intended, until, as he testifies, it had started and was moving off slightly; as his companion testifies, until the car had gone fifteen or twenty feet; and, as the conductor on the car testifies, after it had gone half way to Eighth street. Elsewhere plaintiff also stated that he boarded the Fifteenth street car at Ninth and Main, and that then the transfer man said, "Transfer one."

When the conductor passed through the car collecting fares, he accosted plaintiff sitting in the rear end, and demanded his fare, which he refused to pay, saying that he was a "transfer," meaning that he was entitled to be transferred, having come to the junction as a paid passenger from West Ninth, and that he was entitled to continue to his destination without paying additional fare. There arose a controversy between him and the conductor, who contended that he had not got on the car before it left the junction, and that therefore he had not been transferred. The conductor, being a new man in the business, consulted with the motorman, who was an experienced man, as to what to do in the premises, and was informed that the rule was to put the passenger off if he refused to pay his fare, and this in fact seems to have been the rule. So at Fourth street the conductor called to his aid Rainwater, a policeman, and directed him to put Walker off, as he

testified, but, as the policeman testified, directed him to arrest him and take him off. The policeman arrested plaintiff accordingly, and, on arriving at Markham street, took him to the office of the police judge at the city hall, which is near by; and on the following day the plaintiff was tried on a charge preferred by the policeman for violating a city ordinance which made it a misdemeanor for any person to ride on a street car without paying his fare. And the conductor and the transfer agent, whose post was at the junction aforesaid, were summoned and testified, and the plaintiff was discharged, and then brought this suit against the street car company for malicious prosecution, as stated.

The proof of the rules of the defendant company is very indefinite and unsatisfactory, but we gather this much from the testimony: That transfers of passengers from the cars of one line to another were allowed to be made only at the junction named; that a passenger alighting from an incoming car remained in the vicinity until the arrival of the car to which he asked to be transferred, and, having been within the view of the transfer agent from the time he alighted from the other car, on his boarding the latter car, the transfer agent signaled or called to the conductor thereon that one was transferred, or whatever the number might be, and the conductor in this way was directed to demand no additional fares from these transferred passengers. Whether it was allowable for a passenger to board the second car after it had been put in motion, the witnesses do not inform us, except inferentially. From one of the questions put to the transfer agent and answered by him, one would infer that when a passenger alighted from an incoming car, the transfer agent called out "transfer the party." Such a direction would be nonsensical, until the car to which he wished to be transferred should arrive, and we presume that is what was meant.

However this may be, we will assume, for the sake of the argument, at least, that the police judgment was based upon a proper construction of the testimony, and that the plaintiff was entitled to ride on the Fifteenth street car to his destination without paying the additional fare, and that his ejectment from the car was wrongful, and that his subsequent prosecu-

tion was also wrongful; and even, for the sake of the argument, we will say that the arrest and prosecution were at the instance of the conductor, and that from his conduct in relation thereto malice may be inferred.    This brings us squarely to the only strictly legal proposition in this case, and that is, was the defendant company liable for the acts of its employee, the conductor, in this regard?

The defendant's contention is, in effect, that it is not liable unless there is proof of its express authority to its employee to arrest and prosecute delinquent passengers for a violation of the law on the subject.    In determining what may be regarded as express authority, we may include, for the purposes of this discussion, not only authority given in express words, but such authority as necessarily follows by implication from the express language conferring the authority.

*Central Railroad Company* v. *Brewer*, 78 Md. 394, was a case wherein a person, on entering a street car, deposited in the fare box a coin resembling a five cent piece or nickel, and shortly thereafter was informed by the driver that he had dropped a "lead nickel" into the box (pointing it out to him), and was requested to redeem it, and he refused to do so; and he, after leaving the car, was arrested at the instance of the superintendent of the company, and held to bail, and tried on a charge of passing counterfeit money.    Upon the evidence the United States commissioner before whom the preliminary trial was had discharged him, and he then brought suit for malicious prosecution and false arrest.    The trial court having given four several instructions at the instance of the plaintiff, the defendant asked the following instruction, which was not covered by any of those given, and the same was refused, to-wit: "(2.)    That there is no evidence in the case legally sufficient to prove that any of the officers or agents of the defendant corporation were authorized by the company to have the arrest made, which is complained of in the complaint, or that the company subsequently adopted and ratified the acts of said officers or agents, and the verdict must be for the defendant." After disposing of the various other questions involved, the supreme court of Maryland held that the company was not liable for the acts of the superintendent in causing the arrest

and prosecution of the plaintiff, there being ·shown no express authority from the company to him to do so, nor ratification by it afterwards, as was assumed in the instruction askednd a refused.   To the same effect are *Carter* v. *Home Machine Co.*, 51 Md. 290; *Pressley* v. *Mobile & G. R. Co.*, 15 Fed. Rep. 199; *Mali* v. *Lord*, 39 N. Y. 381; 1 Biddle, Insurance, § 118, and the following English cases, to-wit:   *Eastern Counties R. Co.* v. *Broom*, 6 Exch. 314; *Roe* v. *Birkenhead, etc. R. Co.*, 7 Exch. 36; *Poulton* v. *London & S. W. R. Co.*, L. R. 2 Q. B. 534; *Edwards* v. *London & N. W. R. Co.*, L. R. 5 C. P. 445; and *Allen* v. *London & S. W. R. Co.*, L. R. 6 Q. B. 65—all cited in appellant's brief.

There is in the case at bar no proof of an express authority from the company to the street car conductor to prosecute a passenger for refusing to pay his fare.   Moreover, there is no connection whatever between his authority to put a delinquent passenger off his car (given expressly under the rules of the company), and thus prevent a further imposition on the part of the passenger, and the authority to arrest him and prosecute him for a violation of the criminal laws in attempting to ride on the car without paying his fare.   Nor can the limited authority of a car conductor from the company to put a delinquent passenger off be enlarged by his calling to his aid a policeman whose general powers as such are to make arrests and prosecute for violation of the municipal law.

Nothing else being said, in such a case, the policeman is called in to aid the conductor in the execution of the conductor's powers, and not those belonging to his office generally. Of course, the conductor could have, independently and on his own responsibility, caused the arrest to be made, and could have prosecuted; but could he do so as conductor of the street car, is the question here, and the authorities cited are to the effect that he could not do so, and bind his company, without express authority being shown.

As a matter of fact, the conductor in this instance, in all probability, never intended to do more than act upon the advice of the experienced motorman (that is, put the plaintiff off the car), and never had the idea of prosecuting, maliciously or otherwise; and all the play between himself and the policeman

as to their use and understanding of the words "put off" and "arrest' amount to nothing more than an illustration of the fact that we give meaning to words according to the lingo of our several callings, and as habit and association have determined.    But we express no fixed opinion as to the facts.

The plaintiff's counsel cite many authorities which they contend are in contradiction to the doctrines of the Maryland and other decisions cited.    But, after a careful examination of all of them, we find no real conflict between the principles they announce and the principles of the cases cited by appellant.    The difference is always between the state of facts or the state of pleadings.

In concluding their argument and citation of authorities, they say that "every phase of the question, and every principle invoked in this case, has been passed upon by the court of appeals of New York, and decided against the contention of appellant's counsel," in the case of *Lynch* v. *Metropolitan Elevated R. Co.*, 90 N. Y. 77.    In that case Lynch purchased a ticket for a passage upon defendant's railway, and entered one of its cars. Before reaching his destination he lost his ticket, and when, after getting off at the end of his journey on the train, he attempted to pass through the gate of the enclosure of the depot, he was stopped by the gate-keeper, and informed that he could not pass until he showed his ticket or paid his fare, which appears to have been the rule of the company.    He explained the purchase and subsequent loss of his ticket to the gate-keeper, who then sent for a police officer, and directed him to arrest the plaintiff, which he then and there did, and took him to the police station, where the gate-keeper lodged a complaint against him, and he was locked up over night; and, on the hearing the next morning, the gate-keeper appeared in the prosecution, but the plaintiff was discharged.    "The railway company had given orders to the gate-keeper not to let passengers out until they either paid their fares or exhibited their tickets."    In an action for false imprisonment by the plaintiff against the company, the court held "that the detention was unlawful, that the railway company was responsible for the acts of the gate-keeper, and that Lynch was entitled to recover."    There was no doubt in that case but that the detention was not only unauthorized

by any law, but was in violation of all law; and the first proposition, that the imprisonment was false, followed as a matter of course. The court had found that the gatekeeper did exactly what the company had expressly ordered him to do under such circumstances, and, of course, could but hold that the company was liable. The gatekeeper was simply acting in the plain line of his authority and duty to his master, and that made the latter liable. The circumstances of the prosecution seems not to have been commented upon, except as an incident of the false imprisonment, probably given only as a part of the whole transaction. Whether the gate-keeper had express authority to prosecute or not is not shown in evidence, and that fact was not necessary to a judicial determination of the case, as it was one of false imprisonment, and not of malicious prosecution. The most that could have been made of the defense by the company was a plea of *ultra vires*, which is no defense in such cases.

There is error in the 2d instruction given on part of the plaintiff, in which it is assumed, in effect, that the authority to arrest and prosecute for the criminal offense grows out of the authority to put off the car for refusing to pay fare, there being want of proof of express authority to prosecute.

Reversed and remanded.

Wood. J., dissents, holding that, in order to maintain a suit of this kind against the corporation, it is not necessary to show that its agent, who instigated the malicious prosecution, or at whose instance it was brought about, had any express authority from the corporation to do the act complained of, but that such authority may be and will be implied if the agent in doing the act is acting within the scope of his real or apparent authority.