MAYFIELD v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered December 12, 1910.

1. CARRIERS—DUTY TOWARD PASSENGERS.—A railroad company is bound to use extraordinary care, not only to carry its passengers safely, but also to protect them during the carriage from assault or injury from its agents in charge of the train and from others. (Page 28.)

2. SAME—AUTHORITY OF TRAIN CONDUCTOR.—A train conductor has control, not only of the movements of the train, but also over persons on it, and has authority to compel the observance of the rules of the company by all persons on the train.  (Page 28.)

3. SAME—LIABILITY FOR WRONGFUL ARREST OF PASSENGER.—A railroad company is liable for a wrongful arrest of a passenger made or procured by its servants in charge of the train, and for an illegal arrest of a passenger made by others which in the exercise of due diligence it could have prevented.  (Page 28.)

4. SAME—DUTY TO PREVENT ARREST OF PASSENGER.—No obligation rests upon a railroad company or upon its servants in charge of a train to prevent the arrest of a passenger by an officer duly impowered to make such arrest, nor is it obliged to inquire into the legality of the arrest or to see that the officer uses only such force as is necessary to make the arrest.  (Page 29.)

5. SAME—AUTHORITY OF STATION AGENT.—A railway station agent has no authority to arrest or prosecute a person who has wrongfully taken property of the railway company placed in the custody of such agent.  (Page 30.)

6. SAME—LIABILITY FOR FALSE IMPRISONMENT OF PASSENGER.—A railway company is not liable for the false imprisonment of a passenger wrongfully arrested by virtue of a telegram sent by its station agent where the agent had no authority, express or implied, to send such message, but in doing so was acting solely for his own purtoses.  (Page 32.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; affirmed.

*Warren & Smith* and *Stevens & Stevens,* for appellant.

Appellee's liability does not necessarily rest in the acts of its agent in sending the telegrams being within the strict scope of his employment.  It was appellee's duty to carry appellant safely to his destination, and it is immaterial whether the tort of its agent was in the course of employment or not.  14 Am. Rep. 114; 24 Am. Rep. 296; 17 Am. Rep. 504; 1 Clark & Skyle on Agency, § 496; 42 Am. Rep. 33; 15 Am. State Rep. 753; 3 L. R. A. (N. S.) 605.  That the message was not sent in the interest of appellee or for the protection of its property does not affect its liability.  1 L. R. A. 143; 29 Am. St. Rep. 827; 85 S. W. 1135; 101 *Id.* 412; 58 *Id.* 58; 54 L. R. A. 711; 118 S. W. 266; 70 L. R. A. 943; 7 *Id.* (N. S.) 162, annotations; 44 S. W. 701.

*W. E. Hemingway, E. B. Kinsworthy, H. S. Powell* and *James H. Stevenson,* for appellee.

A carrier's obedience to the commands of an officer having apparent authority who enters upon its train to arrest a passenger is no breach of its duty to the passenger. It is not required to resist the officer, inquire into his authority, or see that he uses only such force in making the arrest as is necessary for that purpose. 2 Hutchinson, Carr. 987; 117 Ga. 63; 60 L. R. A. 713; 126 N. E. 139; 35 S. E. 259.

FRAUENTHAL, J. This was an action instituted by Robert Mayfield, the plaintiff below, to recover damages for his alleged wrongful arrest while a passenger upon one of defendant's trains. The plaintiff was a singing teacher, and for some time prior to May 5, 1908, he had been attending a singing convention in the neighborhood where one J. W. Burton resided, and a few miles from the town of Donaldson. On that day he eloped with the young daughter of Mr. Burton, and proceeded to Donaldson, where he and the young lady took passage on defendant's train for Camden. Upon the same day, and immediately upon learning of the elopement, Mr. Burton went to Donaldson, and requested the station agent of defendant at that place, who was his friend, to assist him in stopping and apprehending plaintiff and his daughter before they should be married. He directed the agent to telegraph to officers at points along the line of the railroad to arrest the plaintiff and his daughter and to send any telegram necessary to apprehend them. The agent sent telegraphic messages to several points along the line of the railroad, and in doing so used the defendant's wires, and signed his name thereto, in some instances, as agent. Among the persons to whom he thus sent messages was the station agent of defendant at Chidester. He talked to this agent over the telegraphic wire, telling him that plaintiff and the young lady were on the train that would shortly stop at Chidester, and to have them arrested, and also stated that plaintiff had stolen $300 from defendant's safe at Donaldson. He sent to the station agent the following telegram to be delivered to the officer· "To conductor: Please advise where young lady and young man that got on at Donaldson got off at and turn

them over to marshal or sheriff and wire me. J. P. Dunlap, Agent, I. M. & S. Ry. Co."

The station agent at Chidester thereupon sent for the marshal of that town, and handed to him the above telegram, and also told him that plaintiff had stolen $300 from defendant's safe at Donaldson. When the train arrived at Chidester, the marshal boarded same and handed the above telegram to the conductor, who directed him to hand it to the auditor. This the marshal did, and at the same time asked him if the parties were on the train. After reading the telegram, the auditor told him that "there was nothing in it," but that the parties were on the train, and he would point them out to him, which he did. Neither the conductor nor auditor requested the marshal to arrest, or assisted him in arresting, the plaintiff, but the auditor simply pointed him out to the marshal upon his demand. The marshal thereupon arrested plaintiff, and took him from the train, and detained him at the hotel at Chidester until the following morning, when the father of the girl arrived. From him the marshal learned that plaintiff had not stolen any money, but was only eloping with his daughter, and thereupon the marshal released plaintiff. Mr. Burton testified that the agent at Donaldson was acting solely for him and at his direction in sending the various telegraphic messages, and that it was stated that plaintiff had stolen the money in order to make the officers more active in apprehending plaintiff. Under the rules and regulations of defendant, which were introduced in evidence, the station agent in the performance of the duties of his employment had no authority to arrest or to direct the arrest of any person or to prosecute or instigate the prosecution of any one. By these rules he was given charge of and made responsible for the defendant's property intrusted to his care.

The evidence introduced upon the trial of the case was practically undisputed, and it established a state of case as above set out. If, under this evidence, the plaintiff was entitled to recover, then the verdict which was returned, and the judgment which was recovered against him, should be reversed. On the other hand, if he was not entitled to recover under this evidence, then no instruction given or refused by the court of which complaint is made could be prejudicial, even if it was

erroneous; for upon the whole case the verdict and judgment would be right.

It is not necessary, therefore, to set out or discuss the various exceptions which plaintiff interposed to the ruling of the court upon instructions given and refused by it.

The question involved in the case for determination then is whether or not under the undisputed evidence the defendant was responsible for the arrest of plaintiff and for the violation of his rights. The liability can be based only on one of two grounds: upon the acts of the auditor and conductor in charge of the train when the arrest was made, or upon the acts and conduct of the station agent in sending and delivering the telegram to the marshal who made the arrest.

1. A railroad company as a common carrier of passengers is bound to use extraordinary care, not only to carry its passengers safely, but also to protect them during the carriage from assault or injury from its agents in charge of the train and from others. By its contract the railroad company assumes the obligation to protect the passenger against any negligent or wilful misconduct of its servants while performing the carriage; it also assumes the obligation to exercise diligence and care in protecting its passengers while *in transit* from violence or wrongful misconduct of others on the train. The conductor has control, not only over the movements of the train, but over persons on it, and has authority to compel the observance of the rules of the company by all persons on the train. He has therefore the power under ordinary circumstances to protect them from violence or wrongful injury from others, and the law makes the company liable for an injury to a passenger resulting from a negligent failure to exercise such power. It is therefore liable for any wrongful arrest of a passenger made or procured by its servants in charge of the train; and it is also liable for an illegal arrest of the passenger made by others which in the exercise of due diligence it could have prevented. 2 Hutchinson on Carriers, § § 980, 1100; 6 Cyc. 598; *Dwinelle* v. *New York Central Rd. Co.,* 120 N. Y. 117; *Duggan* v. *Baltimore & O. Rd.,* 159 Pa. St. 248; *Gillingham* v. *Ohio River R. Co.,* 35 W. Va. 588; *Brunswick & W. Rd. Co.* v. *Ponder,* 60 L. R. A. 713.

But no obligation rests upon the railroad company or upon its servants in charge of the train to prevent the arrest of one who happens to be upon its train by an officer duly impowered to make such arrest. The law does not impose the duty on the conductor to resist or interfere with the authority of an officer acting under color of his office. As is said in 2 Hutchinson on Carriers, § 987: "The carrier is not required to resist an officer of the law who has apparent authority to arrest a passenger, nor is he under any duty to inquire into the legality of the arrest or to see that the officer uses only such force as is necessary to make the arrest. * * * Having a right to presume that the arrest is legal, his obeying the command of the officers is no breach of duty to the passenger." The duty to protect the passenger from violence or assault from others does not demand that the conductor should place himself in opposition to the due administration of the law; and he cannot therefore be said to be guilty of misconduct or of negligence where he simply submits to and complies with the request or demands of those officers whose duty it is to enforce the criminal laws. In the case of *Duggan* v. *Baltimore & O. Rd.,* 159 Pa. St. 248, it is said: "The conductor is not required to enter into a contest with or put himself in opposition to the officers of the law, and if he merely stood by without taking part in the arrest by known police officers he was not bound to inquire into their authority or assert his own against it." While a railroad company is liable in damages for a wrongful arrest and false imprisonment of a passenger made or caused by its conductor in charge of the train without probable cause, although such arrest was in violation of the authority given him by the company, yet it cannot be held liable for an arrest made by an officer without the procurement or instigation of such conductor. *Brunswick & W. R. Co.* v. *Ponder, supra; Mulligan* v. *New York, etc. Ry. Co.,* 129 N. Y. 506.

The uncontroverted evidence in the case at bar shows that neither the conductor nor auditor in charge of the train procured or instigated the plaintiff's arrest. They did not assist in his arrest, but simply refrained from interfering with a duly authorized police officer in making the arrest. The officer had the apparent right, upon information received by him that plaintiff

had committed a felony, to make the arrest with or without warrant, and the servants in charge of the train were guilty of no act of negligence in submitting to the authority of the police officer; and in failing to resist or oppose that authority they did not fail to perform every duty which under the circumstances the company owed to the plaintiff. The defendant cannot be held liable in damages therefore by reason of the acts or conduct of its servants in charge of the train at the time of the arrest.

2. It is urged that the defendant is liable because its station agent at Donaldson procured or instigated the wrongful arrest of plaintiff by causing it to be falsely represented to the officer that he had stolen defendant's property. The question thus presented is whether or not the defendant was responsible for this act of its station agent. The station agent had no authority from defendant either to arrest or to prosecute any person, although such person wrongfully took the property of defendant which had been placed in the custody of such station agent. Nor do we think that he had the apparent authority to make such arrest or prosecute such wrongdoer. It was his duty to care for and protect the property in his charge, but, after such property was stolen, it was not his duty, either expressly granted or impliedly given, to put in motion the criminal laws of the land and cause the arrest or prosecution of the person guilty of the larceny. He had the right to protect the property of defendant placed in his charge and to recover it back, but the arrest of the offender and his prosecution would not protect or recover the property. Such act was not within the real or apparent scope of his employment, nor was it in the line of the business with which he was intrusted, nor was it for the benefit of the defendant. It may be that it is for the benefit of the public that an offender shall be prosecuted, but it cannot be said to be for the benefit of any individual, except in his relation to the public and the State, that such offender should be apprehended and prosecuted. The arrest and prosecution would lead to the punishment of the thief, but it would not tend to recover or protect the property. In the case of *Allen* v. *London & S. W. Ry. Co.,* L. R. 6 Q. B. 65, it is said: "There is no implied authority in a person having the custody of property to

take such steps as he thinks fit to punish a person who he supposes has done something to the property which he has not done. . The act of punishing the offender is not anything done with reference to the property. It is done merely for the purpose of vindicating justice. And in this respect there is no difference between a railway company, which is a corporation, and a private individual." In the case of *Carter* v. *Howe Mach. Co.,* 51 Md. 290, the principle is thus stated: "Where the corporation is sought to be held liable for the wrongful and malicious act of its agent or servant in putting the criminal law in operation against a party upon a charge of having fraudulently embezzled the money and goods of the company, in order to sustain the right to recover it should be made to appear that the agent was expressly authorized to act as he did by the corporation. The doing of such an act could not in the nature of things be in the exercise of the ordinary duties of the agent or servant intrusted with the custody of the company's moneys or goods; and, before the corporation can be made liable for such an act, it must be shown either that there was express precedent authority for doing the act, or that the act has been ratified and adopted by the corporation." In the case of *Edwards* v. *London & N. W. Ry. Co.,* L. R. 5 C. P. 446, the court said: "A servant of a railway company has no implied authority as such to give a person into custody on a charge of felony. It is the duty of any one who sees a person committing a felony to give him into custody, and it cannot be assumed that Holmes was acting in the matter as the company's servant, and not in accordance with that general duty. * * * It is said that Holmes was in charge of the property which he believed was being stolen, and that from that fact it may be inferred that he had authority to act as he did; but the same would apply to a shopman in charge of a shop, or a servant in charge of a house, and yet it has never been suggested that if such a person gave a person in charge for a felony the master would be liable." In Wood on Master & Servant, § 546, the doctrine is thus illustrated: "A clerk to sell goods suspects that goods have been stolen and causes an arrest to be made. The master is not liable for the imprisonment or for the assault, because the arrest was an act which the clerk had no authority to do for

the master, either express or implied." In the case of *Sweeden* v. *Atkinson Improvement Co.,* 93 Ark. 397, we said: "It is well settled that the master is civilly liable for an injury caused by the negligent act of his servant when done within the scope of his employment, even though the master did not authorize or know of such acts or may have disapproved of or forbidden them. But it is also well settled that the master is not liable for an independent negligent or wrongful act of a servant done outside of the scope of his employment." In the case of *Little Rock Traction & Electric Co.* v. *Walker,* 65 Ark. 144, it was held that a street railway company was not liable for the act of its conductor in causing the arrest and prosecution of a passenger in the absence of authority from the company, because such acts were not within the scope of the conductor's employment. *Wright* v. *Wilcox,* 19 Wend. 345; *Dwinelle* v. *N. Y. Cent. Rd. Co.,* 120 N. Y. 117; *Mulligan* v. *New York Cent., etc., Rd. Co.,* 129 N. Y. 506; *Goodloe* v. *Memphis, etc., Rd. Co.,* 54 Am. St. 85. It will thus be gathered from these authorities that the liability of the defendant herein for the act of its station agents in causing the wrongful arrest of plaintiff depends upon whether such act was performed in the line of their duty and within the scope of the authority conferred upon them by the defendant. The evidence adduced in this case most favorable to plaintiff does not bring it within this principle. The procurement of the arrest of plaintiff was not done in the ordinary course of the business of the company, nor was it for its benefit, except in so far as it might be for the benefit of all the people of the State that a criminal should be arrested, prosecuted and convicted. If the agent, acting from a sense of public duty, should cause the arrest of an offender, his conduct would in no way be connected with his employer so as to fix upon him a liability.

In the present case therefore the station agent had no authority, either express or implied, to cause the arrest of plaintiff, even if he had believed that he had stolen the defendant's property and was endeavoring to act for it. So that in such event, the act not being within the line of his duty or within the real or apparent scope of his authority, it could not fasten upon defendant a liability for the injury resulting therefrom. But,

under the undisputed evidence adduced in the case, the station agent at Donaldson was solely acting for Burton, the father of the girl, in sending the messages. He was doing a service solely for the benefit of his friend, and not for the defendant. He had stepped aside from the defendant's business, and from the line of his employment, and was acting solely for his own purposes.

The defendant therefore was not liable for the act of the station agent at Donaldson in sending the message to the station agent at Chidester which resulted in procuring plaintiff's wrongful arrest. It follows that under the undisputed evidence introduced at the trial of the case the defendant was not liable for the wrongful arrest of plaintiff.

The judgment is affirmed.