NEWHOUSE MILL & LUMBER COMPANY *v.* KELLER.

Opinion delivered April 15, 1912.

1.  APPEAL AND ERROR—REFUSAL OF CONTINUANCE.—The refusal of a continuance is a matter within the discretion of the trial court, and will not be ground for reversal unless an abuse of discretion clearly appears.   (Page 543.)

2.  CONTINUANCE—SUFFICIENCY OF MOTION.—A motion for continuance on account of the absence of a witness who lived in a distant county was insufficient where it failed to state the residence of the witness or facts showing that his attendance or deposition could be had at a

future term, nor any facts showing that due diligence was used to secure his attendance or deposition. (Page 543.)

3. CONTINUANCE—SUFFICIENCY OF MOTION.—Where, in an action for breach of a contract to deliver logs to a mill at $10 per thousand feet, defendant's motion for continuance stated that an absent witness would testify that he sold logs to the plaintiff at from $6 to $8.50 per thousand feet, but did not state how many logs were sold at that price or what was the cost to deliver them at the mill, it failed to show the materiality of such testimony. (Page 544.)

4. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict based on conflicting evidence will not be set aside on appeal upon the ground that it is against the preponderance of the testimony. (Page 545.)

5. INSTRUCTIONS—PREPONDERANCE OF EVIDENCE.—It was not error to instruct the jury that the preponderance of the evidence "is not determined *solely* by the greater number of witnesses testifying in relation to any particular fact or state of facts." (Page 546.)

6. SALES OF CHATTELS—MERGER—JURY QUESTION.—Whether a contract of sale of chattels was abrogated by a later contract is a question for the jury where the two contracts were so different that it could not be said, as matter of law, that the later contract was intended to abrogate the other. (Page 548.)

Appeal from Lincoln Circuit Court; *Antonio B. Grace,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee alleged that he entered into a contract with appellant whereby, for a consideration of $500 paid by appellee to appellant and the agreement on his part to move his mill from Monticello, in Drew County, to Gould, in Lincoln County, and to erect same on the land of appellant and to saw timber, appellant agreed to furnish appellee with timber estimated at 4,000,000 feet, for which appellee was to pay $10 per thousand feet. Payments were to be made at the end of each month. The timber was to be delivered at appellee's mill at the rate of at least 6,000 feet per day, and appellant was to pay appellee $10 per day for every day that appellee could not run his mill by reason of the failure of appellant to supply him with logs. If the appellee refused to settle for timber according to the contract, the appellant had the option to declare the contract void.

Appellee moved his mill at an expense of about $1,200, and operated same under the contract until September, 1909,

when the appellant refused to furnish him timber under the contract, but demanded of appellee the sum of $12.50 per thousand feet. He alleged that he ceased operating his mill, and at that time the appellant had only furnished him 250,000 feet under the contract; that he could only secure timber similar to that called for by the contract at $12.50 per thousand, making a loss to him of $2.50 per thousand on 3,750,000 feet, amounting to $9,375. He asked for damages for the expense of moving his mill in the sum of $1,200 and for $9,375 for the value of timber in excess of the contract price, making a total of $10,575, for which he prayed judgment.

The appellant admitted that it entered into a contract with appellee, but alleged that the contract was reduced to writing but not signed. It set up that the contract was as follows:

"For and in consideration of the sum of $500 cash in hand paid by the party of the first part, the receipt of which is hereby acknowledged, and the mutual obligations assumed by each to this contract, it is agreed that the party of the first part hereby agrees to sell and deliver, and by these presents does sell, to the party of the second part, at Gould, Ark., all of the merchantable white oak, red oak, and ash logs which the hereinafter described lands owned or controlled by the party of the first part will produce, namely: (Then follows a description of the lands, and character and dimensions of timber to be cut).

"It is further agreed that the party of the first part shall deliver to the party of the second part, and the party of the second part shall accept, all such logs produced from the above described lands at the rate of not less than six thousand (6,000) feet per day and not more than ten thousand (10,000) feet per day until all the logs shall have been cut therefrom.

"The party of the second part reserves the right to order the discontinuing of the cutting of said timber in case of a breakdown in his mill or an accident to the mill over which he has no control, but in no event shall such discontinuance last for more than_____ days.

"It is also agreed that the measure of damages, as against the party of the first part, in case said party of the first part fails to deliver six thousand (6,000) feet of logs per day, if a

delay proves expensive to party of the second part, the sum of $10 per day for every day such delay occurs, exclusive of Sundays; and the failure of the party of the second part to accept the logs as delivered shall operate as a cancellation of this contract, at the option of the party of the first part.

"It is agreed that all logs shall be scaled by a party to be agreed upon by both parties hereto, provided that such an agreement can be reached, but, in case of a disagreement, each party is to choose a scaler; the two so chosen shall choose a third, whose scale is to be accepted as final, and all differences shall be adjusted according to his judgment and his scale.

"The party of the second part agrees to pay the party of the first part for all logs delivered during the month upon the 10th day of the following month at the rate of $10 per thousand for the merchantable scale."

It is conceded in the answer that the contract contemplated the furnishing of timber from about 1,800 acres; that both parties entered upon the contract as above set out and operated under its terms until about September 27, 1909, when it is alleged by appellant that the above contract was abrogated by mutual agreement, and a new contract was entered into of a totally different nature, and that all differences arising out of the old contract were adjusted at the time the new contract was entered into. The appellant then set out the last contract, by which the appellant, the party of the first part, agreed to deliver to the appellee, the party of the second part, white and red oak logs of a merchantable grade for a consideration of $12 per thousand feet. The party of the second part agreed that all the oak logs were to be manufactured into ties of certain dimensions except such as the party of the second part might desire for the manufacture of other products. For the manufacturing of the ties the first party was to pay the second party ten cents apiece, except for rejected ties. The contract then provided for a basis of settlement at the price of $12 per thousand feet log scale. The latter agreement was to be in effect until January 1, 1910. The party of the first part was to pay the party of the second part for white oak switch ties of certain dimensions the sum of $3.20 per thousand feet board measure.

The appellant further alleged that appellee and appellant

operated under the terms of the first contract, set out above, until appellee "declined to accept the logs tendered him by the company, and that, exercising its option under the contract, the company declared the contract cancelled, and that the sole reason for the discontinuance of the contract was because Keller refused to live up to the terms thereof, and that there was no breach on the part of the company."

The suit was instituted March 24, 1910. The answer was filed August 3, 1910, and on September 15, 1911, appellant moved for a continuance, setting up that a certain witness, if present, would testify that he sold logs to the appellee, such as were called for by the contract between appellant and appellee, for a price of $6 to $8.50 per thousand feet, and that appellee could have procured a large amount of logs at that price during and at the time he alleged that appellant had refused to furnish him logs. Appellant alleged in the motion "that it had used all the diligence to procure the attendance of said witness at this trial, but that he lives in a distant county, and it has not been able to locate him. As it is informed, he (naming him) has been travelling and away from the State, and the information as to his knowledge of the facts came too late to either ascertain his whereabouts or secure his presence at this trial, or to secure his deposition."

The court overruled the motion for a continuance. The cause proceeded to a hearing before a jury, and, after the jury heard the evidence and the instructions of the court, they returned into court a verdict in favor of the appellee in the sum of $2,500 for difference in the contract price and market value of logs not delivered as specified in instruction No. 11.

Judgment was rendered in appellee's favor for that amount to reverse which appellant duly prosecutes this appeal. Other facts to be stated in the opinion.

*C. P. Harnwell,* for appellant.

1. The preponderance of the evidence was clearly against appellee. The tenth instruction is not only ambiguous and misleading, it in effect authorized the jury to accept the testimony of one man and ignore the testimony of ten others unimpeached. 20 Ark. 607; 77 Fed. 970; 76 Am. Rep. 990; *Id.*

626; 51 So. 663; 114 Pac. 442; 119 N. Y. Supp. 180; 49 So. 650; 149 Ill. App. 298; 82 N. E. 407; 140 Ill. App. 454; 115 N. Y. Supp. 98; 138 Ill. App. 455; 109 N. Y. S. 1008; 50 Mich. 573.

2.  The verdict is excessive.  29 Ark. 49; *Id.* 380;  26 Ark. 365; 46 Ark. 141.

*Coleman & Gantt,* for appellee.

1.  There was no error. nor abuse of discretion in overruling the motion for a continuance, which shows on its face that the witness wanted was out of the county and his attendance could not have been compelled.  The motion, moreover, does not conform to the law.   96 Ark. 354; 67 Ark. 47; *Id.* 290; 85 Ark. 413; 71 Ark. 62.

2.  The verdict of a jury will not be disturbed if there is any evidence sufficient to sustain it.  97 Ark. 438, 442; *Id.* 486; 67 Ark. 531; 74 Ark. 478.

3.  The tenth instruction given by the court is correct. 37 Ark. 580; 17 Cyc. 761, and cases cited; 14 Enc. of Evidence, 84, 89; 87 Wis. 607; 58 N. W. 1031; 17 Cyc. 776; 6 Words & Phrases, 5517; 174 Mass. 580; 55 N. E. 318; 242 Ill. 312; 89 N. E. 1008; 89 N. E. 857.

4.  The verdict is not excessive.  The testimony would have sustained a verdict for $7,500.  If the form of the verdict was objectionable, such objection should have been made when it was returned.  38 Cyc. 1904; 138 Ind. 252; 36 N. E. 1094; 149 Ind. 264; 49 N. E. 33; 64 N. E. 331.

WOOD, J., (after stating the facts).  1.  The court did not err in overruling the motion for a continuance.  Such motions are addressed to the discretion of the trial court; and unless they have clearly abused such discretion in refusing to grant a continuance, this court will not reverse the ruling.  *Taylor* v. *Gumpert,* 96 Ark. 354, and cases cited.

The residence of the absent witness was not stated in the motion.  It was alleged that he lived in a distant county, but otherwise no information is given the court showing that his attendance could be had at a future term.  It does not appear that appellant would be in any better position, so far as the attendance of the absent witness was concerned, at the next term of the court.  The motion alleges due diligence, but does not allege facts from which the court could

see that due diligence had been exercised. Appellant does not show that he had had a subpoena issued to procure the attendance of the witness in person, or that the witness was within the jurisdiction of the court, or that he had endeavored to take his deposition, or that his presence might be had, or, if not, his deposition taken for the future trial. There is nothing alleged, in fact, to warrant the court in continuing the case.

It is not an abuse of discretion to refuse to continue a cause for the absence of a witness where there appears no reasonable hope of finding him. *Lane* v. *State*, 67 Ark. 290; *Puckett* v. *State*, 71 Ark. 62.

Moreover, the facts which it is alleged the witness would testify to would not be sufficient, in the absence of other facts not stated in the motion, to make the testimony relevant or competent. While it is alleged that the witness sold logs to the appellee at a price of from $6 to $8.50 per thousand feet, it is not stated how many logs he sold at that price, nor what it would cost to deliver the logs sold by him to appellee's mill. Under the contract, the logs had to be delivered by appellant at appellee's mill. A motion for a continuance should state facts and not conclusions. *Richie* v. *State*, 85 Ark. 413.

2. The court refused appellant's prayer for instruction numbered 5, which is as follows:

"If you find that Keller did not scale the logs as agreed under the terms of the memorandum contract, and neglected or refused to do so after being requested to do so, then this was a breach of the contract on his part; the defendant had the right to cancel the contract, and you will find for the defendant."

Appellant urges that it was error to refuse this prayer. The contract set up by appellant has this provision:

"It is agreed that all logs be scaled by a party to be agreed upon by both parties hereto, provided that such an agreement can be reached, but in case of a disagreement each party is to choose a scaler, the two so chosen shall choose a third, whose scale is to be accepted as final, and all differences shall be adjusted according to his judgment and his scale."

The rejected prayer assumes that it was the duty of the appellee, under the contract, to scale the logs; and, if upon

request he refused to do so, he breached his contract. The prayer imposes a duty on appellee that was not contained in the contract. There was no undisputed evidence to the effect that it was appellee's duty to scale the logs. According to the provisions of the contract, it was the duty of both parties to it to see that the logs were properly scaled. The appellee could not be held to have breached the contract in this respect unless he had refused to join with the appellant in having the logs scaled as the contract provided. There is no evidence in the record to show that appellee refused to have the logs scaled according to the method of scaling provided by the contract. There is testimony tending to prove that, after the logs had been scaled by the agent of appellant, its agent requested appellee to scale them, and that he refused to do so. But this testimony is very far from showing that appellee refused to comply with the provisions of the contract in regard to scaling the logs. There is no proof in the record to the effect that appellant ever requested appellee to submit to a joint arrangement for scaling the logs as specified in the contract. Moreover, the court submitted to the jury the question as to whether or not appellant had refused to accept the logs of the kind specified in the contract, and told the jury that if he did refuse to accept the logs of the kinds and dimensions agreed upon this would be a breach of his contract, which would justify the appellant in refusing further performance on his part. Under such instructions the appellant could not have been prejudiced.

3. Appellant urges that the verdict is contrary to the evidence. This presents purely a question of fact, and we deem it unnecessary to review the testimony. Appellant's counsel states that "the testimony is somewhat conflicting, but the conflict consists in this, that appellee alone testifies to one state of facts and all the balance of the witnesses testify to the contrary, so that it is one man's word against eight or ten other witnesses, that is, as to the essential facts."

This presents just such a state of case as the jury alone could settle. It is not for this court to determine disputed questions of fact; and where there is conflict of testimony this court will not disturb the verdict and reverse a judgment based upon such verdict because forsooth we would not have

rendered such a verdict had we been sitting as jurors. This is contrary to the rule adopted by this court, and would overturn the rule which has long been recognized, and which, it is believed, best comports with our judicial system for administering justice.

In the case of *St. Louis & San Francisco Rd. Co.* v. *Kilpatrick,* 67 Ark. 47, 61, we said: "It seems to us the preponderance of the evidence was in favor of appellant's contention, and the learned trial judge might very properly have set aside the verdict; but he saw and heard the witnesses, and doubtless knows something of their character and standing, which is impossible for us to know. After the trial judge has permitted such a verdict to stand, such deference is given to his opinion that it has become a time-honored rule of law not to disturb his finding when there is legally sufficient evidence to justify the verdict. The question here is not what we think the verdict should have been, but was there any evidence before the jury sufficient in law to warrant the verdict as it is?" *St. Louis, I. M. & S. Ry. Co.* v. *Baker,* 67 Ark. 531; *St. Louis, I. M. & S. Ry. Co.* v. *Hill,* 74 Ark. 478; *St. Louis, I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438; *Chicago, R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 486.

Here a decided preponderance of the evidence is in favor of the contention of appellant, but the testimony of appellee himself, which the jury accepted, tends to establish the allegations of his complaint, and was amply sufficient to warrant the finding of the jury as to the terms of the contract, its breach on the part of appellant, and the amount of damages for which the verdict was returned.

4. Appellant insists that the court erred in giving instruction numbered 10, which is as follows:

"A preponderance of the evidence means the greater weight of evidence, but this is not determined solely by the greater number of witnesses testifying in relation to any particular fact or state of facts. It means that the testimony on the part of the party on whom the burden rests must have greater weight in your estimation; have a more convincing effect than that opposed to it. If, in your opinion, the testimony on any essential point, as hereinbefore explained in these instructions, is evenly balanced, then the party on whom

the burden rests to prove the same by a preponderance of the evidence must be deemed to have failed in regard thereto."

It will be observed that the court does not tell the jury that numbers are not to be considered in determining the question of preponderance or greater weight of testimony. On the contrary, by using the words "solely" the court, in substance, told the jury that in considering the question as to which party had the greater weight of evidence in his favor it was proper for the jury to take into consideration the number of witnesses testifying. The adverb *solely* qualifies the verb *determined*. If it had been omitted, then the effect of the instruction would have been to tell the jury (as appellant contends) that the number of witnesses was not to be considered in determining the question of preponderance, and that it would be within the province of the jury to "believe one man and ignore the unimpeached testimony of ten others." But by the use of the term *solely* the jury, as we have said, were told that they should consider the number of witnesses in passing on the question of preponderance. The instruction, as phrased, is correct.

"In ascertaining the preponderance the maxim is *testes ponderantur non numerantur*, and numerical preponderance of witnesses does not necessarily constitute a preponderance of evidence so as to require a contested question of fact to be decided in accordance therewith." 17 Cyc. p. 766, and cases cited in note.

The Supreme Court of Massachusetts, in *Trager v. Webster*, 174 Mass. 580, says: "But the weight of evidence in these days is measured by more delicate tests than a simple count of witnesses, and such quantitative estimates are not likely to be enforced in this commonwealth except when established by authority." See *Shinn v. Tucker*, 37 Ark. 580, and other authorities cited in appellee's brief.

The cases cited by learned counsel for appellant are where the courts, in effect, told the jury that the number of witnesses could not be taken into consideration in determining the question of preponderance. In other words, the instruction in these cases would have been substantially the same as would have been the instruction in the case at bar had the qualifying term "solely" been omitted from the instruction.

5.   The verdict is not excessive.   According to the testimony of the appellee, appellant was to furnish him, under the contract, timber that was estimated to be four million feet; whereas it furnished him only 250,000 feet, leaving a balance of about 3,375,000 which it failed to furnish.   According to appellee's testimony the difference between the price of the timber as specified in the contract and the price which appellee would have had to pay for similar timber on the market would have been as much as $2 per thousand feet.   This testimony furnished ample evidence for the amount of the verdict.

There was no objection raised by the appellant to the form of the verdict at the time it was rendered; besides, no valid objection could have been made to it.   It was in conformity with the court's instructions, and could have been readily understood and covered the issues.   38 Cyc. 1904; *Purner* v. *Koontz,* 138 Ind. 252; *Garrett* v. *State,* 149 Ind. 264; *West Chicago St. Ry. Co.* v. *Horne,* 64 N. E. 331.

The instructions of the court on the measure of damages, taken together, were correct.   They were in conformity with the law as announced by this court and the authorities generally.   See *Border City Ice & Coal Co.* v. *Adams,* 69 Ark. 219; *Saxe* v. *Penokee Lumber Co.,* 54 N. E. 14.

6.   The court refused appellant's prayer No. 4, which is as follows:

"If you find from the evidence that a final settlement was made between Keller and the Newhouse Company under the terms of the old or memorandum contract, and a new contract was entered into between the same parties upon September 27, 1909, and they operated under the terms of the latter contract, then the plaintiff can not recover damages as sued for under the terms of the old contract, and you will find for defendant."

The court, on its own motion, gave instruction No. 9, as follows:

"If you find from the evidence that the parties had a full settlement of all matters growing out of the original contract, and entered into a new agreement with the intention of abandoning said original contract and treating the same as no longer in force, then you should find for the defendant."

These rulings of the court are urged as error. Appellant's manager testified as follows:

"We had a final settlement under the old contract about October 1, 1909, when he gave us a check in final settlement. Keller understood at the time that this was a settlement in full under the old contract, and after the date of the new contract, September 7, 1909, we operated solely under the new contract, the old contract being abrogated. The new contract was entered into solely at the solicitation of Keller. We never refused to deliver logs to Keller. Keller refused to accept merchantable logs which we furnished him."

The appellee testified as follows: "I began operating the mill about May 15, 1909, (under the original contract), and operated it up, except for a short time in July, until September. I probably cut 250,000 feet in that time, and I paid the defendant for it at $10 per thousand. They paid me in full for a delay of thirty-three days in failing to supply me timber ($330), and about September 20 or 25 McClellan told me he could not furnish me any more timber, as he said he could get $12.50 and $15 for the logs he was bringing me. I had turned down logs as not being merchantable, and finally he came down and scaled back and took away 4,600 feet. He then refused to bring me more logs, and got me into this tie contract. I was making chair and wagon stock. There was a profit in it for me from $2.50 to $4.00 per thousand. McClellan told me he would like to make a contract with me like Muse's. This was to last ninety days. I told him if it interfered with my old contract I would not go into it. He told me that he had a contract to get out ties, and that if I would go into this contract he would take care of me after that. After my contract for cutting ties expired, I demanded that they bring me logs under my old contract, but they refused to do so. I was not able to secure logs from any other source, and finally abandoned my mill."

The contract of September 27, 1909, set up in appellant's answer, and which it claims abrogated the original contract, differs entirely in its terms from the original contract. The original contract was for the sale of the timber on certain tracts of land at $10 per thousand, and the contract to con-

tinue until all of the timber contemplated by the parties was delivered under the contract at that price.

The new contract was an agreement on the part of appellee to manufacture ties for the appellant out of certain timber that was to be furnished by the latter at the rate of $12 per thousand feet, and the ties were to be taken by appellant at the price of ten cents per tie.

The latter contract, by its terms, was to be in effect only until January 1, 1910. These two contracts were so different in their terms that it can not be said as a matter of law that the parties by entering into the latter contract intended to abandon the rights and obligations of the original contract. It was a question of intention as to whether the parties by the latter contract settled the differences growing out of the terms of the original contract.

Under the evidence, we are of the opinion that the court properly submitted it as a question of fact to be determined by the jury rather than declaring as a matter of law that the parties, by entering into the latter contract, abrogated the former. The court, therefore, was correct in refusing the prayer of appellant and in submitting the question to the jury, as it did in instruction No. 9.

Various other objections are urged in the brief of the learned counsel for the appellant to the rulings of the court in the giving and refusing of prayers for instructions. We have examined these, and, in our opinion, the charge of the court, taken as a whole, correctly presented the issues, and there were no errors in the court's rulings prejudicial to the appellant.

The judgment is therefore affirmed.

KIRBY, J., dissents.