BLACK & WHITE CAB COMPANY *v.* DOVILLE.

4-9865                                        251 S. W. 2d 1005

Opinion delivered October 27, 1952.

*Hugh M. Bland,* for appellant.

*Gutensohn & Ragon* and *Lyman Mikel,* for appellee.

Ed. F. McFaddin, Justice. This appeal involves the liability of a taxicab company for allowing an assault on a passenger.

Appellant, Black & White Cab Company, (hereinafter called "Cab Company") is a corporation engaged in the taxicab business in Fort Smith. Appellee, Paul Doville, filed action against the Cab Company for actual and punitive damages which he alleged were sustained by him when he was assaulted and beaten while a passenger in a taxicab of the Cab Company. Liability was predicated not only on the failure of the driver of the taxicab to render the required degree of care to Doville, but also on the willful and wanton conduct of the driver. The Cab Company denied all liability, and trial to a jury resulted in a verdict for $500 actual damages and $500 punitive damages. The Cab Company brings this appeal and presents the points now to be discussed.

I. *Motion for Instructed Verdict.* At the close of the plaintiff's case, and again at the conclusion of all the evidence, the Cab Company moved for an instructed verdict. The refusal of such motion is assigned as error, so we review the evidence supporting the verdict.[1]

Appellee Doville telephoned the Cab Company requesting a cab to be sent to his address; and in due time, the cab arrived. The driver was Jack Faught, and on the front seat with him were Granville Stewart and Robert Early. On the back seat of the cab were Gene Hettle and Thomas Monroe. Doville was seated on the back seat immediately behind Early. When Doville said he

---

[1] The rule is well settled that in determining the correctness of the trial court's decision in refusing to direct a verdict for defendant, the evidence is viewed in the light most favorable to the plaintiff. *Mo. Pac. Ry.* v. *Harville,* 185 Ark. 47, 46 S. W. 2d 17; *Safeway Stores* v. *Mosely,* 192 Ark. 1059, 95 S. W. 2d 1136; *Acco Transport* v. *Smith,* 207 Ark. 70, 178 S. W. 2d 1011; and other cases collected in West's Ark. Digest "Appeal & Error," § 927 (7).

wanted to be taken to the main post office downtown, Early, who had been drinking, said: "No, you want to go with us; we are going to Alma." Doville reiterated his desired destination and then Early turned around, grabbed Doville by the necktie, pulled him forward, and hit him in the face and mouth and on the shoulders and neck. Doville was bleeding and dazed. When the cab stopped to discharge Hettle, Doville tried to get out, but Early and the other man on the front seat seized Doville and pulled him back in the cab, and Early continued to beat him over the head. The taxicab driver did not protest, call the police, or do anything to discourage the assault or to protect Doville.

When the cab was still some distance from Doville's desired destination, Early told the driver: "Let's put him out here". Accordingly, Doville was allowed to leave the cab, and he immediately called the police and gave a report of the assault. Doville insisted that he said nothing to anyone in the cab except to announce his desired destination. He testified as to his injuries, loss of time, clothing, etc.; but since the amount of the verdict for actual damages is not questioned, we forego these details.

Doville was corroborated as to the assault and battery by Gene Hettle, a young boy who was a passenger in the cab, and who also testified that the cab driver and Early each took one or two drinks of whiskey while Hettle was in the cab. Doville was also corroborated by Mr. Monroe, who was seated with him in the taxicab. Monroe testified that the driver of the taxicab did nothing to stop the assault on Doville and uttered no protest as to the assault. Monroe also testified that Early pulled Doville back in the cab when the Hettle boy got out and that Doville also tried unsuccessfully to get out of the cab when Monroe left.

It is true that Early and Stewart, testifying for the cab company, gave their version of the affair; and each claimed that Doville provoked the attack, but the facts heretofore stated clearly made a case for the jury, and

the Circuit Court was correct in refusing the Cab Company's motion for an instructed verdict.

II. *Motion for Continuance.* Jack Faught was the driver of the taxicab at the time of the attack on Doville; the Cab Company sought to obtain a continuance on account of Faught's absence at the time of the trial; but the continuance was refused. The Court was correct in so ruling. Mr. Staton, president of the Cab Company, said that Faught left Fort Smith the next day after the assault; that Staton had been unable to locate Faught, but thought he was working in Oklahoma City. Thus there was no showing whatsoever that Faught would be present at any later trial. The granting of a continuance is within the sound discretion of the trial court; and it is not an abuse of discretion to refuse to continue a cause on account of the absence of a witness when there appears no reasonable assurance of finding the witness. See *Old American Co.* v. *Hartsell,* 176 Ark. 666, 4 S. W. 2d 25; *Newhouse Mill & Lumber Co.* v. *Keller,* 103 Ark. 538, 146 S. W. 855. See also West's Ark. Digest "Continuance," § 22.

III. *Admission of Evidence.* Over the objection of the Cab Company, the Court permitted testimony to the effect that about thirty minutes after the attack on Doville, the same Jack Faught, Granville Stewart and Robert Early (who occupied the front seat of the taxicab when Doville was attacked) were together at El Charro, a drive-in place in Fort Smith; that Robert Early there assaulted Mr. Carl Patterson and knocked him down without any provocation; and that shortly after the Patterson assault, the police apprehended Early, Stewart and Faught. In admitting this evidence, part of which was testified to by Stewart on cross-examination, the trial court said:

"Ladies and gentlemen of the jury, I now instruct you that you may consider any event that may have taken place at the El Charro as this witness testified about, you cannot use it as substantive proof in this case. It only goes to show a common design or intent and

you are to only consider it for that purpose and for no other purpose.''

We hold that the trial court was correct in the ruling. The three men, Stewart, Faught and Early, had been together when Doville was beaten in the taxicab. It was shown that the cab was equipped with a two-way radio to the office of the Cab Company, and that Faught never reported to the office anything about the attack on Doville. Instead, Faught continued to ride around with Early and Stewart, one of whom had assaulted his passenger, and the other of whom had grabbed the passenger and helped pull him back in the car. Instead of trying to protect his passenger as the law required, Faught continued to consort with those who had participated in the attack. Faught and Early had been drinking together while in the taxicab, and this evidence of continued association was of some force as to Faught's common design with Early and Stewart. This evidence was also of value on Faught's willfulness or wantonness, which was one of the essentials for punitive damages.

It has long been the rule that other transactions may be shown as tending to indicate a general plan or motive, if such other transactions are of the same nature as the one in question and reasonably close in time to the one in issue. *Myers* v. *Martin*, 168 Ark. 1028, 272 S. W. 856; *McCaskey Register Co.* v. *McCurry*, 181 Ark. 649, 26 S. W. 2d 1108.

IV. *Instruction as to Actual Damages.* In Instruction No. 3, the Court told the jury:

''You are instructed that a common carrier owes a duty to protect its passengers from assaults from third party passengers; and so in this case if you believe and find from the evidence that the conduct of the passenger, Robert Early, mentioned in evidence, by whom the plaintiff claims to have been assaulted and battered at said time and place as alleged in his complaint, while a passenger in a cab of the defendant, Black & White Cab Company, and prior to the happening of the assault and battery, the conduct of the said Robert Early was such

as would induce a reasonably vigilant and prudent cab driver by the exercise of ordinary care to have anticipated that said passenger was likely to assault and batter plaintiff, then it would become the duty of the defendant, its driver, agent, servant, and employee in the exercise of a high degree of care to use all reasonable means to protect the plaintiff from assault and battery from said passenger; and if you find and believe from the evidence that the defendant, its driver, agent, servant and employee, failed to use a high degree of care to prevent such assault and battery upon the plaintiff; and if you so find that said passenger did assault and batter the plaintiff; and if you find and believe from the evidence that the defendant, its driver, agent, servant and employee failed to exercise a high degree of care to prevent said passenger from assaulting and striking the plaintiff; and if you further believe and find from the evidence that the failure, if any, of the defendant, its driver, agent, servant and employee, to prevent said passenger from assaulting and battering the plaintiff was carelessness and negligence, if any, on the part of the defendant, its driver, agent, servant and employee; and if you further believe and find from the evidence that as a result of the carelessness and negligence, if any, on the part of the defendant, its driver, agent, servant and employee, in failing to protect plaintiff from said passenger, and that said passenger did strike and knock down plaintiff, and that as a direct result thereof, plaintiff was injured through no fault of his own, then the plaintiff is entitled to recover and your verdict must be for the plaintiff for actual damages, if any.''

The Cab Company objected to this Instruction, and claimed: ''Said Instruction places a higher degree of care on the defendant than that required by law''. In *National Fire Ins. Co.* v. *Yellow Cab Co.*, 205 Ark. 953, 171 S. W. 2d 927, we said: ''The weight of authority is to the effect that the standards of care which prevail as to common carriers, generally, apply to those engaging in the business of operating taxicabs. 4 Blashfield, Automobile Law, § 2201, p. 46.'' See, also, 37 Am. Jur. 598.

We have many cases in our reports stating the degree of care which a carrier owes to a passenger to attempt to protect him from an assault by another passenger. Some of these cases are: *Chicago Ry. Co.* v. *Brown,* 111 Ark. 288, 163 S. W. 525; *Mayfield* v. *St. Louis R. Co.,* 97 Ark. 24, 133 S. W. 168, 32 L. R. A., N. S. 525; *Ark. Power & Light Co.* v. *Steinheil,* 190 Ark. 470, 80 S. W. 2d 921. Also reference books state the rule of law in such cases. See 4 R. C. L. 1181, 10 Am. Jur. 266, 13 C. J. S. 1255 and 13 C. J. S. 1294.

In our case of *Arkansas Power & Light Co.* v. *Steinheil, supra,* Mr. Justice FRANK G. SMITH said:

". . . a carrier owes to its passengers the duty of protection from the violence and insults of other passengers or strangers so far as this can be done by the exercise of a high degree of care, and will be held responsible for its own or its servants' negligence, in this particular, when, by the exercise of proper care, the act of violence might have been foreseen and prevented."

Tested by our own cases and the law generally, we find no error in the Instruction No. 3 as against the objection made by the Cab Company.

V. *The Instruction on Punitive Damages.* In Instruction No. 4 the Court told the jury that if the driver of the Cab Company failed to exercise the required degree of care in protecting Doville, and if "the said driver's actions constituted a conscious indifference and a willful disregard of the rights of Paul Doville as a passenger in the defendant's taxicab, then you may in addition to plaintiff's actual damages assess punitive damages against the defendant. You are instructed that punitive damages are defined as those damages imposed by the way of punishment and are such that are awarded for that purpose in addition to compensation for the actual loss sustained."

The Cab Company claimed that the Instruction was in error, because it "does not correctly state the elements of punitive damages, but picks out only 'conscious indifference and willful disregard' leaving out the other

essential elements necessary to fully advise the jury upon what grounds the award could be made, the rule being that exemplary damages are recoverable only for willfullness, wantonness or conscious indifference to consequences from which malice will be inferred . . ."

The right of a passenger to recover punitive or exemplary damages has heretofore been before this Court. In *Chicago Ry. Co.* v. *Whitten,* 90 Ark. 462, 119 S. W. 835, Mr. Justice FRAUENTHAL gave this statement of our holdings:

"But exemplary damages will not be allowed on account of an injury growing out of a mistake, or ignorance, or negligence, no matter how gross the negligence may be. The rule relative to the right of recovery of exemplary damages from a common carrier for a wrongful or negligent violation of its obligations and duties to a passenger has been formulated by this court in the following language: 'Negligence, however gross, will not justify a verdict for exemplary damages unless the negligent party is guilty of wilfulness, wantonness, or conscious indifference to consequences, from which malice will be inferred.' *Railway* v. *Hall,* 53 Ark. 7; St. *Louis, I. M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136, 66 S. W. 661; *Arkansas & La. Ry. Co.* v. *Stroude,* 77 Ark. 109, 91 S. W. 18; *Choctaw, O. & G. Rd. Co.* v. *Cantwell,* 78 Ark. 331, 95 S. W. 771; *St. Louis, I. M. & S. Ry. Co.* v. *Dysart,* 89 Ark. 261, 116 S. W. 224; *Greer* v. *White,* 90 Ark. 117, 118 S. W. 258." See, also, 10 Am. Jur. 420, *et seq.*

It is clear that if the driver of the taxicab was guilty of willfulness, wantonness *or* conscious indifference to consequences, then malice might be inferred from such acts. The Instruction No. 4 said: "a conscious indifference *and* a willful disregard". It was, therefore, more favorable to the Cab Company than the law required and was not open to the objection made.

The judgment is affirmed.