FORT SMITH & VAN BUREN DISTRICT *v.* KIDD.

Opinion delivered May 8, 1922.

1. MASTER AND SERVANT—WHEN RELATION EXISTS.—Where a contract between a bridge district and a traction company provided that the district employ collectors of the bridge fares for the benefit of both, the expenses to be divided, the collectors were the servants of the bridge district and the traction company.

2. BRIDGES—LIABILITY OF BRIDGE DISTRICT FOR FALSE ARREST.—In an action against a bridge district for false arrest and imprisonment of a passenger ejected from a trolley car, where the act creating the district made it an agent of the State, to which powers and duties of a public nature were delegated and which could exercise only the corporate functions which the State conferred, the district was not liable for the act of its servant in causing the arrest.

3. CARRIERS—RULE AS TO USE OF COUPONS.—A carrier has the right to use coupon books, and, in consideration of a reduced price, to provide that the coupons will not be accepted if detached.

4. CARRIERS—RIGHT TO EJECT PASSENGERS.—A carrier is authorized to eject a passenger who unlawfully presents a detached coupon and refuses to pay his fare.

5. FALSE IMPRISONMENT—FAILURE TO PAY FARE.—Where a failure to pay his fare on part of a passenger was not made a violation of law, though the carrier was authorized to eject a passenger who refused to pay, such failure did not authorize the passenger's arrest.

6. FALSE IMPRISONMENT—LIABILITY OF CARRIER.—Where a passenger who refuses to pay fare is ejected by being arrested, the carrier is liable for the act of its servant in procuring the arrest if the arrest itself is unauthorized.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; reversed and affirmed.

*James B. McDonough* and *Hill & Fitzhugh,* for appellants.

No authority is conferred upon the commissioners of the district to authorize an arrest, and it had no power to do so. Improvement district cannot be made liable for a tort. 94 Ark. 380; 119 Ark. 166; 115 Ark. 88; 114 Ark. 366; 110 Ark. 416; 118 Ark. 1; 131 Ark. 286; 170 S. W. 1012; L. R. A. 1918-B, p. 1010; 104 S. E. 309.

The coupon ticket presented by plaintiff was void. Michie on Carriers, p. 1627, sec. 2224.

Neither the district nor Taylor, its servant, who furnished the information upon which the arrest was made, was liable. No false imprisonment was proved. 95 Ark. 227; 12 A. & E. Enc. of L. p. 739; 9 Cyc. p. 330. Before false imprisonment can be made out it must be proved that the arrest was without legal authority. 92 Ark. 128; 143 Ark. 394. The act being committed in the presence of the officer, he was authorized to make the arrest without a warrant. C. & M. Dig. sec. 2904. There is no liability on the officer. 34 Ark. 105. He was not acting for either appellant, hence no liability. 106 Ark. 109. There can be no presumption of authority from the district or the company. 65 Ark. 144; 79 Ark. 85. A carrier is not liable for false imprisonment, even if a special agent exceeded his authority. 84 Ark. 193; 87 Ark. 524; 119 Ark. 28; 135 Ark. 76; 218 S. W. (Ark.) 678; 126 Ark. 260.

The relation of master and servant did not exist between the company and the bridge collector, who caused the arrest, and the doctrine of *respondeat superior* could not apply. 1 Labatt, Master & Servant, sec. 2-20; L. R. 6 Q. B. Div. 532; 22 Sou. 403; 52 Am. Rep. 129. A distinguishing feature of the relation of master and servant is that the employer retains the control over the mode and manner of doing the work under the contract of living. 38 Pac. 320. The contract between the district and the company provides that the company shall have no control over the collectors; their services were performed for the district. Therefore the company was not liable for the act of the commissioners. 28 L. R. A. 552; 38 L. R. A. (N. S.) 379; 57 Ark. 615; 98 Ark. 399; 87 Ark. 524. Conceding, for the sake of argument, that the collector was in the employ of the company, it would still not be liable, as the arrest was not shown to have been within the scope of his employment. 87 Ark. 524; 65 Ark. 144; 135 Ark. 76.

*Webb Covington*, for appellee.

The arrest of appellee having been made by an employee of the district and company, it was incumbent on them to show justification. 105 Ark. 619. The agent was acting within the apparent scope of his authority and the principals were liable for his wrongdoing. 97 Ark. 24; 135 Ark. 80; 78 Ark. 553. The business of collecting fares was a joint undertaking, and both appellants were liable.

SMITH, J.  Appellee sued the Fort Smith & Van Buren District, hereinafter referred to as the district, and the Fort Smith Light and Traction Company, hereinafter referred to as the company, to recover damages for false arrest and imprisonment. He recovered judgment in the sum of $1 against both defendants, and both have appealed.

Appellee took passage in Fort Smith for Van Buren on one of the company's cars, and paid the fare, which is collected before crossing the bridge over the Arkansas River connecting the two cities. A different collector collects the fare over the bridge, and it is the custom for this officer to ride over the bridge on each car crossing it and to collect the fare from the passenger while doing so. This fare, if paid in cash, is five cents; but books are sold containing coupons, each of which is good for one passage across the bridge, at a cost of one and one-fourth cents for each coupon. These coupons are void if detached, and the collectors are forbidden to accept them for fares if detached. Plaintiff, in crossing the bridge, tendered a detached coupon, which Taylor, the collector, refused to accept, and as plaintiff declined to pay the cash fare he was ejected and arrested when the car reached the Van Buren side of the river.

The plaintiff testified that, upon reaching the opposite side of the river, the car was stopped and Taylor called to one Arnold, a deputy sheriff, who appears to have been stationed on the bridge for the purpose of assisting in the collection of fares. Taylor called Arnold into the car, where plaintiff was arrested by Arnold and

carried to the end of the line, and from there Arnold carried plaintiff before a justice of the peace, after having held him in custody for about two hours, and a charge of disturbing the peace by refusing to pay fare was preferred. No contention is made that plaintiff disturbed the peace or did anything else to be ejected for except to refuse to pay the bridge fare; and the charge preferred before the justice of the peace was later dismissed. When Arnold took plaintiff into custody, he asked him pleasantly if he was about to make a test case, and plaintiff disclaimed any such purpose.

The bridge over which the company operates its cars was built by an improvement district under an act of the General Assembly, which has been construed by this court in the cases of *Shibley* v. *Ft. Smith & Van Buren District,* 96 Ark. 410; *Nakdimen* v. *Ft. Smith & Van Buren Bridge District,* 115 Ark. 194; *Ft. Smith Light & Traction Co.* v. *Williams,* 149 Ark. 159.

There was offered in evidence the contract under which the company acquired the right to use the bridge in crossing the river. The principal provisions of this contract are set out in the case of *Ft. Smith Light & Traction Co.* v. *Williams, supra,* and need not be repeated here. In construing the contract in that case we said:

"We shall not undertake to analyze and comment upon the various provisions of the contract. It evidenced an agreement by which the bridge district is to receive a certain sum of money from the traction company for the right granted the latter to run its cars for the transportation of passengers over the bridge. The original act expressly authorized the bridge district to charge the traction company for its right-of-way over the bridge. *Nakdimen* v. *Ft. Smith & Van Buren Bridge District,* 115 Ark. 194. By the same token the traction company, having thus acquired the right-of-way over the bridge, could exercise it with all of its privileges, one of which was to charge passengers who used its facilities. The amount charged the traction company by the district is

a definite and fixed sum ascertained and measured by the number of passengers which the traction company transports in its cars over the bridge and the amount which the traction company charges each passenger for such transportation. The traction company is a common carrier, and had a right to charge those whom it transported on its cars across the bridge according to the tariff of rates filed with the Corporation Commission. Act 571 of the Acts of 1919, p. 411, secs. 5, 6 and 7. See *Helena Water Co.* v. *Helena,* 140 Ark. 597. The money derived from this source, through the sale and use of tickets, and by the payment and collection of the cash fares in the absence of tickets, was primarily the property of the traction company and not of the bridge district. It became the property of the bridge district only because under the terms of the contract the traction company agreed to let the bridge district collect and use it in payment for the right-of-way privilege granted the traction company by the bridge district, and because the bridge district agreed to accept it as such.''

It is true the contract provides that the district shall employ and control and discharge the officers who collect the bridge fares; but this is done for the benefit of both defendants. In fact, the contract requires the traction company to assist in the collection of the bridge fares, and to furnish free transportation to the officers collecting them, and to pay $50 per month when only one collector is employed and to pay $100 per month when two are employed. In other words, the traction company is the carrier which renders the service for which the charge is made, and it makes the charge; but the fare is collected by the district for its use and benefit and as rental for the use of the bridge.

Under these facts we are of opinion that the officers engaged in collecting the fares are the servants of both defendants, and ordinarily each defendant would be liable for the conduct of these agents while acting within the line of their duty and within the scope of their authority. But it appears from the decisions of this court above cited,

construing the act creating the bridge district, that the district is one of those agents of the State to which certain powers and duties of a public nature have been delegated and which can exercise only the corporate functions which the State has expressly conferred upon them. Of such district it was said in the case of *Board of Improvement Sewer District No. 2* v. *Moreland,* 94 Ark. 380: "Public *quasi* corporations are created with limited statutory powers, and the general rule, as respects the question of liability to individuals for the negligence of their officers or agents, is that no such liability attaches unless expressly provided by statute. 1 Beach on Public Corporations, §§ 4, 262, 263; *Mahoney* v. *Boston,* 171 Mass. 427." Other cases to the same effect are: *Jones* v. *Sewer Imp. Dist.,* 119 Ark. 166; *Harnwell* v. *White,* 115 Ark. 88; *Wood* v. *Drainage Dist.,* 110 Ark. 416; *Eickhoff* v. *Street Imp. Dist.,* 120 Ark. 212; *Browne* v. *Bentonville,* 94 Ark. 80.

On behalf of the company it is not only insisted that the officers making the arrest were not its employees, but that, even if they were, such action was beyond the scope of their authority.

It may be first said that the defendants had the right to use the coupon books and, in consideration of the reduced rate at which they were sold, to provide that the coupons would not be accepted if detached. 2 Michie on Carriers, § 2224. The opinion in the Williams case, *supra,* recognizes that right.

It may also be said that, as an incident to the right to collect fares, the right existed to eject a passenger who refused to pay. The plaintiff had no right to use the detached coupon which he presented in payment of his fare, and as he refused to pay the cash fare the defendants had the right to eject him from the car. But the failure to pay the fare is not made a violation of the law, and there was no authority to arrest plaintiff. In other words, plaintiff's cause of action must be predicated upon the arrest, and not upon the ejection.

The liability of a carrier for the act of its employee in causing the arrest of the passenger has been several times considered by this court. See *Dickinson* v. *Muse,* 135 Ark. 76, and the cases there cited. In both the Muse case, *supra,* and the case of *St. L. I. M. & S. R. Co.* v. *Waters,* 105 Ark. 619, this court quoted as a correct declaration of the law a syllabus from the case of *Little Rock Ry. & Elec. Co.* v. *Dobbins,* 78 Ark. 553, which reads as follows: "A street railway company is liable for the wrongful acts of its conductor in ordering a policeman to arrest one of its passengers and remove him from the car in which he was riding; but not for such conductor's subseqent acts in prosecuting the passenger for a breach of the peace, such prosecution not being within the scope of the conductor's authority."

In the Dobbins case, as well as in the later cases which cite and follow it, it is made clear that a carrier is not liable for the action of its employees in authorizing arrests and prosecutions of persons who have been ejected or refused passage. But, if the passenger is ejected by being arrested, then the carrier is liable for that action if the arrest itself is unauthorized. It was so expressly held in the Dobbins case, *supra,* where it was said: "The evidence, so far as it related to the arrest of the appellee on the car by the policeman at the request and direction of the conductor, was proper, for this was the method adopted by the conductor for the ejectment of appellee from the car, and was therefore an act in the scope of the conductor's employment."

Plaintiff in the instant case was ejected by being arrested. It was within the scope of the collector's authority to eject him, and the company is therefore liable for the improper method employed in discharging the duty of ejecting the passenger.

The judgment against the district is reversed and dismissed. The judgment against the company is affirmed.

The chief justice dissents as to the order affirming the judgment against the defendant Fort Smith Light and Traction Company.

McCULLOCH, C. J., (dissenting). It has been definitely decided by repeated decisions of this court that it is not within the scope of authority of a conductor on a railroad train or street-car to cause the arrest of a passenger or to place one under arrest, unless it be done in the course of ejection from the car, and that even then the authority ends with the ejection, and the carrier is no further responsible for the act of its servant. *Little Rock Traction & Electric Co.* v. *Walker,* 65 Ark. 144; *Little Rock Ry. & Elec. Co.* v. *Dobbins,* 78 Ark. 553; *Dickinson* v. *Muse,* 135 Ark. 76.

In each of the cases cited the ejection from the car was wrongful, and therefore the carrier was held liable for the arrest to the extent that it was embraced within the ejection from the train. In the present case, however, it is conceded that the ejection from the car was rightful, for the reason that the passenger had refused to pay the fare, and since the arrest in connection with the ejection and during its progress inflicted no injury, the carrier is not liable, even for nominal damages.

Of course, if excessive force was used in rightfully ejecting the passenger from the car, or if he was unnecessarily humiliated by the arrest in the presence of other passengers, he might recover for injuries inflicted by the excessive force, or unnecessary arrest; but in the present instance it is not shown that there was any humiliation resulting from the arrest. Appellee does not make any such claim, and there were no damages allowed him for humiliation or any other character of actual injury. The court only allowed nominal damages, and appellee does not complain.

So it seems clear to me that, if there were no actual damages resulting from the arrest in connection with the ejection from the train and as a part of the act of ejection, then the carrier is not liable.

My conclusion is that, on the undisputed testimony, the judgment against both of the appellants should be reversed and the action as to each of them dismissed.