ARKANSAS CENTRAL POWER COMPANY v. HILDRETH.

Opinion delivered June 27, 1927.

1. FALSE IMPRISONMENT—JURY QUESTION.—Evidence *held* to present a question for the jury whether defendant's motorman caused the arrest of plaintiff riding as a passenger on defendant's street car.

2. FALSE IMPRISONMENT—AUTHORITY TO CAUSE ARREST—JURY QUESTION.—Whether a motorman acted within the scope of his authority in causing plaintiff's arrest while riding on the street car, for the purpose of ejecting her for nonpayment of fare, or to protect other passengers from disorderly conduct, *held* a question for the jury, under the evidence.

3. FALSE IMPRISONMENT—LIABILITY OF STREET RAILWAY COMPANY.— A street railway company is not liable for the motorman's act in causing the arrest of a passenger after the passenger's voluntary departure from the car.

4. FALSE IMPRISONMENT—LIABILITY OF STREET RAILWAY COMPANY FOR WRONGFUL ARREST OF PASSENGER.—A street railway company is liable for the wrongful arrest and detention of a passenger while on the street car, caused by the conductor-motorman.

5. FALSE IMPRISONMENT—CAUSING PASSENGER TO BE ARRESTED.—The act of a motorman in causing a person to be arrested while on street car, and to leave the car in custody of an officer at the point where the passenger intended to debark, is tantamount to ejection from the car.

6.  APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict of
    the jury on conflicting evidence *held* conclusive on appeal.

7.  FALSE IMPRISONMENT—RELEVANCY OF EVIDENCE.—Evidence that a
    passenger, who was arrested for disorderly conduct while on a
    street car, was acquitted by the municipal court *held* relevant on
    the issue as to whether the arrest was lawful and as to the
    measure of damages, in an action against the street railway
    company.

8.  FALSE IMPRISONMENT—WHEN DAMAGES NOT EXCESSIVE.—Where a
    passenger was wrongfully arrested while on a street car for dis-
    orderly conduct and taken from the car by an officer at a busy
    street corner, *held* that $600 was not excessive compensation for
    the humiliation suffered.

9.  EVIDENCE—JUDICIAL NOTICE.—The Supreme Court will take cog-
    nizance of the fact that the intersection of the street railway
    company at Fifth and Main streets is one of the busiest in the
    city of Little Rock.

Appeal from Pulaski Circuit Court, Third Division;
*Marvin Harris,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough* and
*Elmer Schoggen,* for appellant.

*Booker & Booker* and *John A. Hibbler,* for appellee.

WOOD, J. This action was instituted by Roberta Hil-
dreth, plaintiff, against the Arkansas Central Power
Company, defendant. The plaintiff alleged, in substance,
that the defendant is an Arkansas Corporation engaged
as a common carrier in the operation of a street railway
transporting passengers in the city of Little Rock,
Arkansas; that, on September 28, 1925, plaintiff was a
passenger on one of defendant's cars, known as the South
Main car, which was being operated by one man, the
conductor-motorman; that she paid her fare and took her
seat in the car; that the conductor-motorman claimed
that she had not placed the proper fare in the box; that
he caused the plaintiff to be unlawfully arrested and
falsely imprisoned and to suffer other humiliations and
indignities, to her damage in the sum of $5,000, for which
she prayed judgment.

The defendant denied all the material allegations
of the complaint, and alleged that, if the plaintiff was
arrested, it was because of her own misconduct, and that,

if the conductor-motorman caused the plaintiff to be arrested, such action on his part was not within the scope of his authority.

The plaintiff testified, in substance, that she and her little daughter and one Ruby Corley entered one of defendant's cars at 23rd and Main streets; that she paid the fare. She had twenty cents in her hand and offered same to the conductor-motorman, who told her to drop it in the box, which she did, and then went to her seat. The conductor-motorman hollered to her, "You owe me three pennies," and she replied, "Well I dropped twenty cents in the box." Ruby Corley said, "Instead of owing him three pennies, he owes us two;" and she asked him for the two pennies. The conductor-motorman said to her "If you don't sit down, I will put you off the car." She insisted, and said, "Well, I want my two pennies—they are mine; they are not yours," and he told her again "If you don't sit down I will put you off the car." When the car got to 5th and Main the conductor-motorman would not let us off the car. He held us until he called the policeman, and arrested us and carried us down to headquarters, where we were held until bond was made for us. Witness went back to court the next morning.

Over the objection of appellant, witness was permitted to testify that she and her little girl were arrested, and that they were turned loose. On cross-examination she stated, among other things, that they were going to get off at 5th and Main. When they got off there, the officer told them to come with him, and witness asked the officer why he had arrested her, and stated that she had not said anything, and the officer told her to tell Judge Lewis that. The officer held them at the drug store until he called the patrol. They walked over to the corner in front of the drugstore. Plaintiff testified that the officer came on the car at 5th and Main and took them off the car. The motorman would not open the door of the car. They were still there at the door, waiting to get off, when the officer came. He made them get off. The

policeman stepped off the car in front of them and told them to come and go with him. He did not take witness off. He told them, before the car door was opened, that they were under arrest for disturbing the peace. Witness talked with him after they were off the car on the ground, because she wanted to know why he had arrested witness, for she had not said anything to the motorman.

G. C. Self testified, in substance, that he boarded the car at the same time plaintiff did. Witness corroborated the testimony of plaintiff as to the payment of the fare. After the plaintiff took her seat, she stated that she was due two cents in change; that was the only word witness heard pass between plaintiff and the motorman. Plaintiff and her companion got off the car at 5th and Main. They were taken off by the policeman, who was directed to do so by the motorman and another gentleman who was on the car. Witness stated: "When the car stopped at 5th and Main, a gentleman came from the rear of the car and spoke to the motorman. Just in a minute or two they beckoned to the officer, and the officer came forward while the girls were getting off, and took charge. The motorman did not abuse the plaintiff in any way. The officer came to the front of the car, and the women were pointed out at the rear as they were getting off. As well as witness remembered, the officer went down on the outside of the car. Witness would not be positive about that. The women were fixing to get off. Witness did not remember whether the officer took charge of them before they got off or after they got off. Witness could not say that he heard the policeman say anything to them in the car. He did not hear the policeman say anything, but knew that the policeman arrested them from the fact that they were pointed out to him and he took charge of them. Witness could not say whether the policeman got on the car or not, but he heard the motorman call the policeman, and saw him point out the plaintiff and her companion to the officer, and heard the motorman say, "Take charge

of them." Witness didn't know whether the motorman held the door until the policeman came. He thought the door did not open before the policeman got there because they had not got off the car at that time. The car stood there two or three minutes. Witness looked back, and they were getting off the car, and at the same time the policeman came forward.

Over the objection of defendant the court permitted the plaintiff to prove that she was acquitted by the municipal court on the charge of disturbing the peace.

D. P. Poole, a witness for the defendant, testified that he was an operator in the employ of the defendant, and was operating the car at the time the plaintiff was arrested. When the plaintiff and her companions boarded the car, they dropped a dime and a slick nickel in the box, and plaintiff said, "I am paying for three." Plaintiff got about five or six feet back in the car and witness called her and told her she had only put fifteen cents in the box. Witness thought that she had made an honest mistake. They went back in the car and the young yellow negro girl with plaintiff got to cursing and raising quite a disturbance all the way down town. The passengers complained to witness, and when witness got to 5th and Main he called the policeman and told him that this colored girl was raising quite a disturbance, and asked him to go back there and quiet her down or cool her off, or something like that. At that time plaintiff and her companions were going back towards the back end of the car to get off. Witness let them off of the car. After the officer came and witness talked with him, he went back through the car to where they were. Witness didn't hear the officer say anything to them on the car. Witness did not instruct the officer to arrest them. After the officer went back to the back end of the car, the woman got off the car. The officer got off too. Witness did not curse or abuse the plaintiff in any way. Witness did not hear the plaintiff say anything. Witness told the policeman to go back and "quiet them down or cool them off"—that they were raising a dis-

turbance on the car. They were still fussing when witness called the policeman and told him to go back and quiet them down or cool them off. Witness pointed out the other woman who was doing the fussing. The car witness was operating was one of the old cars, and the doors are slow releasing. As soon as witness got to the proper stopping place, he released the door. Witness let the officer on at the proper stopping place at 5th and Main. Witness thinks he let him on first. The same policeman that witness talked to took charge of the plaintiff, and asked the witness to appear at the city court the next morning. Witness did not put the plaintiff off the car. The policeman did not put her off the car. She got off voluntarily. Witness did not have anything to do with them getting off. Witness opened the door when he got to the proper stopping point.

Other witnesses who were passengers on the car at the time corroborated the testimony of the conductor-motorman to the effect that the other woman companion who got on the car with plaintiff created a disturbance and used profanity—ugly words—for several blocks on the car. One of the witnesses asked the motorman why he did not call the cop on the car to do something about the disturbance, and he beckoned to the policeman to get on the car. The policeman got on the car at the front door and went straight through the car. Witness did not hear the officer say anything to the plaintiff and her companion while they were on the car. One of the witnesses stated that the way he saw it the plaintiff and her companions were getting off the car without any one bothering them. They were waiting for the back door to open when the policeman got back there. Then they all stepped off and went to the curb and started talking, and the car pulled on. Witness did not hear the plaintiff use any profane language whatever. She could not say that plaintiff used any language that would ordinarily be a breach of the peace. The officer got on the car at the direction of the motorman.

G. W. Witt testified that he was on the police force of the city of Little Rock, and made the arrest of the plaintiff and another colored woman at 5th and Main. He was directing traffic at that point at the time the motorman drove up and whistled to witness to come over to the car, and told witness that some colored women were raising a little disturbance on the car. Witness got on the car at the front door, and the motorman pointed the women out to witness. The motorman opened the back door of the car, and they went out. Witness did not take the women off the car. They got off at the back, and witness followed them and told them to wait a minute. The witness was asked if the operator told him to arrest the plaintiff, and answered, "Well, I believe he told me they needed cooling off, or something to that effect." Witness arrested both of the women, and sent them down to police headquarters after he got over on the corner. They were off the car when witness got hold of them. If witness said anything to them on the car, he did not remember it. They started to walk off, and witness said, "Wait a minute—what's all the trouble?" Witness had no warrant for their arrest, and there was no violation of the law in witness' presence. Witness did not know anything about what they had done. The defendant proved that the motorman had no authority to arrest or cause the arrest of passengers for law violation.

The court, over the objection of the defendant, instructed the jury to the effect that, if they found from the evidence that the conductor-motorman of the car caused the arrest and imprisonment of the plaintiff and the taking of the plaintiff from defendant's car by the policeman, the defendant was liable for the acts of its agent or employee in whatever sum the jury found from the evidence she was entitled to by reason of the false imprisonment. The court further instructed the jury that, to constitute imprisonment, it was not necessary that there should be actual confinement in a jail or prison; that any exercise of force by which a person is deprived

of liberty and is compelled to remain where she does not wish to remain, or go where she does not wish to go, is an imprisonment. The court refused to grant defendant's prayer for instruction No. 1 for a directed verdict in its favor. The court also refused defendant's prayer for instruction No. 2, which, in effect, told the jury that the authority of the motorman to do the acts complained of could not be inferred from his employment, and that the burden was on plaintiff to prove that the arrest was authorized by the defendant, and, if she failed to establish that fact, their verdict should be in favor of the defendant.

In its prayer for instruction No. 3 the defendant asked the court to instruct the jury that it was the duty of a passenger to refrain from the use of loud and abusive language which disturbed other passengers on the car, and that, if the plaintiff knowingly and willfully failed to perform her duty in this respect, or aided or abetted another in thus disturbing the other passengers, then the operator in charge of the car was authorized to report her conduct to an officer of the city, or to eject her, if necessary, to protect other passengers on the car, and, if such were the fact, the defendant would not be liable therefor.

In its prayer for instruction No. 4 the defendant asked the court to tell the jury that the street-car operator, who has authority to preserve order on his car, does not also have authority, by virtue of his employment, to cause the arrest of a passenger for disorderly conduct; that, if the operator of the defendant improperly caused the arrest of the plaintiff, the defendant would not be liable.

In instruction No. 5 the defendant asked the court to tell the jury that, if the plaintiff had voluntarily left or was voluntarily leaving the car at 5th and Main at the time she was arrested, the defendant would not be liable. The court modified this instruction by striking the words "or was voluntarily leaving" and gave the instruction as modified.

The defendant's prayer for instruction No. 6 is as follows: "You are instructed that a street-car operator who has authority to preserve order on his car does not also have the authority, by virtue of his employment or his duty as such operator, to cause the arrest of a passenger for disorderly conduct, and thereby render the company liable for damages if the arrest was improper, unless such arrest be used as a mode of ejection of the passenger at the time thereof, and, even though you find from the evidence in this case that the operator of the defendant improperly caused the arrest of the plaintiff, yet such conduct on his part would not make the defendant liable unless such arrest was used by the conductor-motorman as a means of ejecting the plaintiff from the car." The defendant duly excepted to the ruling of the court on these prayers for instructions.

The court gave defendant's prayer for instruction No. 7, which told the jury that the defendant in no event would be liable for the arrest of the plaintiff after she had alighted from the car, and, if they found that she was placed under arrest after she had alighted, the verdict should be in favor of the defendant.

The court instructed the jury on its own motion, over the objection of the defendant, that, if the jury found for the plaintiff, they would find for her in such sum as would compensate her for any humiliation she may have suffered by reason of her arrest, and also instructed the jury, on its own motion, that the burden of proof was on the plaintiff to show by preponderance of the evidence her right to recover, and that by preponderance was not meant necessarily the greater number of witnesses, but the greater weight of evidence. The court also instructed the jury that they were the sole judges of the credibility of the witnesses and the weight of the evidence, and that they should take into consideration all the instructions and consider all the evidence in the case.

The jury returned a verdict in favor of the plaintiff in the sum of $600. Judgment was rendered in favor of the plaintiff for that sum, from which is this appeal.

1.   The appellant contends that the court erred in refusing to grant its prayer directing the jury to return a verdict in its favor; that the evidence wholly fails to show that the conductor-motorman caused the arrest of the plaintiff. We have set forth the testimony bearing upon this issue, and deem it unnecessary to comment upon it at length. It suffices to say that it was an issue for the jury, under the evidence, as to whether or not the conductor-motorman caused the arrest of the plaintiff. The testimony of the plaintiff and of the witness Self, who testified in her behalf, tended to prove that plaintiff was arrested by the policeman, acting under the direction of the motorman, before she got off the car. Indeed, the testimony of the appellant's motorman and of the officer who made the arrest tends to prove that the arrest was made at the suggestion, if not the positive direction, of the motorman-conductor. The conductor himself said that "this colored girl is raising quite a disturbance," and he asked the officer to go back there and "quiet her down, or cool her off, or something like that." The officer, when asked whether the motorman told him to arrest the plaintiff, replied, "I believe he told me they needed cooling off, or something like that."

The jury were fully warranted from the above testimony, even of the appellant's witnesses, in finding that the arrest of the plaintiff was caused at the suggestion of the appellant's motorman.

The appellant next contends that, even if the conduct of its motorman caused the arrest of the plaintiff, such conduct of the motorman was beyond the scope of his authority. But we are also convinced that it was an issue for the jury, under the evidence, to determine whether the conductor-motorman was acting within the scope of his authority, if he caused the appellee to be unlawfully arrested and falsely imprisoned, as she alleged and as her testimony tended to prove. One of the wit-

nesses for the appellant testified that, at 5th and Main, witness said something to the motorman about the disturbance on the car, and said, "Why don't you call that cop on here and ask him to do something about this?" and witness further said that the operator said to the policeman, "I have some colored people back there that I want you to cool off." The conductor-motorman himself testified that he told Mr. Witt, the officer, that this colored girl was raising quite a disturbance, and asked the officer to go back there and "quiet her down, cool her off, or something like that." He further testified that the young yellow negro girl got to cursing and raising a disturbance on the way down town. She was raising such a disturbance that passengers complained about it to witness, and witness, at 5th and Main, called the officer on duty there and asked him to do as above stated.

The undisputed testimony shows that the motorman of this car was also its conductor. He was in full control of the car. If the appellee had not paid her fare and thus established her relation as a passenger of the appellant, its motorman-conductor had the right to eject her, and was acting within the scope of his authority if, in ejecting her, he called an officer and asked him to arrest her and take her from the car. Or, if the conduct of the appellee, at the time she was arrested, was so obstreperous and disorderly as to be offensive to other passengers and to make it necessary to "quiet her down, or cool her off," as expressed by the motorman, then the motorman had a right to eject her for that reason, and, if he detained the appellee on the car and called the officer and directed him to take charge of the appellee and her companions, and this method was adopted by the conductor-motorman as the means of ejecting appellee from the car, in so doing he was acting within the scope of his employment. On the other hand, if the appellee had paid her fare, she had established the relation of passenger and carrier, and was entitled to the protection as a passenger, and was also under the duty to conduct herself so as not to disturb other passengers by conduct calculated to cause

a breach of the peace. If appellant's conductor-motorman called the officer and asked him to arrest the appellee because he conceived that she was guilty of a breach of the peace by using language and otherwise conducting herself in a manner to disturb the other passengers, and that the services of an officer under the circumstances were necessary to arrest and thereby eject her in order to quell the disturbance she was creating, then the conductor-motorman was acting within the scope of his employment in causing the arrest of the appellee on the car, because, in so doing, he was acting within the line of his duty and the scope of his employment in preserving order and protecting the other passengers from the conduct of a fellow passenger causing annoyance to them and calculated to produce a breach of the peace. Therefore, if the appellant's conductor-motorman caused the arrest of the appellee while on the car, for the purpose of ejecting her for the nonpayment of fare, or for protecting the other passengers from her offensive and disorderly conduct, in either case he was acting within the scope of his employment; and, if he employed unlawful and improper methods—more force than was necessary—in the discharge of his duties, the appellant is liable to the appellee for the damages caused thereby. But if the conductor-motorman did not detain the appellee and her companions and keep them from voluntarily debarking at 5th and Main, after the car stopped, and did not cause appellee's arrest while she was on the car, but did direct the officer to arrest her, and the officer arrested her after she left the car, then such conduct on the part of the conductor-motorman was beyond the scope of his authority, and the appellant would not be liable for such conduct. It occurs to us therefore that, under the evidence above set forth, the issue as to whether the conductor-motorman was acting within the scope of his authority was clearly an issue of fact for the jury.

2. Mr. Booth, on the Law of Street Railways, lays down the law as follows: "Irrespective of the regulations of the company, the conductor has the right, and it

is his duty, within the scope of his authority, to put off a passenger, even after his fare is paid, if he becomes disorderly or offensive. It is the duty of the carrier's servants to preserve order and to protect its passengers against the willful conduct of any of their number which is necessarily offensive. A passenger who enters a car and refuses to pay his fare, and, on being requested to leave the car, uses profane or indecent language, may be forcibly ejected, but the company will be liable for injuries resulting from excessive or unnecessary force. So a passenger who, at least without great provocation, willfully calls the conductor a liar in the presence and hearing of other passengers, is guilty of disorderly conduct which will forfeit his rights as a passenger. The grossly profane and indecent language of a passenger in a railroad coach where there are ladies has been held to be such breach of decorum, although he may have been provoked to it by the conduct of the conductor, as will work a forfeiture of his right to be carried as a passenger, and authorize the conductor to cause him to be expelled from the car, using no more force than is necessary for the purpose; and the exaction of a trifling sum for fare, which had already been paid, is held not to be a sufficient provocation for such conduct." Section 369, page 597.

And Mr. Nellis, on Street Railways, says: "It is the duty of a street railway company to treat its passengers with courtesy and kindness; and where one of its employees, while engaged in the business of the company, whether willfully and maliciously, or in consequence of what he considered a duty, ill-treats a passenger, so far as to wrongfully cause his arrest, the company is liable for it. And where the evidence shows that a passenger was arrested without any cause, charged with an offense, and forced to undergo a trial, it has been decided that express malice may be found, and that the company is liable." 2 Nellis, page 703, § 341.

Numerous cases are cited by these authors in notes to their text. In one of the cases, *Stewart* v. *Brooklyn & Crosstown Ry. Co.,* 90 N. Y. 588, 591, 43 Am. Rep. 185, the

New York Court of Appeals announced the general rule as follows:

"A common carrier is bound, so far as practicable, to protect his passengers, while being conveyed, from violence committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract."

But it is unnecessary to look elsewhere for the law applicable to the various phases of the evidence set forth *supra*. The law applicable to the facts of this record has been thoroughly settled by the decisions of this court. Similar duties of carriers by steam railroads to their passengers is announced in *Mayfield* v. *Railroad,* 97 Ark. 24, 133 S. W. 168, 32 L. R. A. (N. S.) 525. The *crux* of the lawsuit involves more a question of fact than of law. If the arrest and imprisonment of the appellee was after she had voluntarily debarked from appellant's car, then the appellant is not liable in damages to the appellee for such arrest and imprisonment, because in that case, even though it may have been directed and caused by the appellant's motorman-conductor, such arrest was beyond the scope of his authority. But, if, on the other hand, the arrest and detention of the appellee was caused by the conductor-motorman while she was yet a passenger on appellant's car, and such arrest was wrongful, unnecessary, and therefore unlawful, then the appellant would be liable in damages proximately resulting from such arrest, because the conductor-motorman, in such case, would be acting within the scope of his employment.

In *Little Rock Traction & Electric Company* v. *Walker,* 65 Ark. 144, 45 S. W. 57, 40 L. R. A. 473, one who claimed to be a passenger was arrested on the street car at the direction of the conductor, on the ground that the passenger had not paid his fare. The plaintiff was taken to the police station by the officer and the next day was tried on a charge preferred by the policeman for violating a city ordinance which made it a misdemeanor

for any person to ride on a street car without paying his fare. Under those facts we held, quoting syllabus: "A street railway company is not liable for the acts of its conductor in maliciously prosecuting a passenger for violating a city ordinance making it a misdemeanor for any person to ride on a street car without paying fare, in the absence of authority from the company to the conductor to institute such prosecution."

And in *Little Rock Ry. & Electric Co.* v. *Dobbins,* 78 Ark. 553, 95 S. W. 788, we held that a street railway company is liable for the wrongful acts of its conductor in ordering a policeman to arrest one of its passengers and remove him from the car in which he was riding, but not for such conductor's subsequent acts in prosecuting the passenger for a breach of peace, such prosecution not being within the scope of the conductor's authority.

In *St. Louis I. M. & S. Ry. Co.* v. *Waters,* 105 Ark. 619, 152 S. W. 137, we held: "A railway company is not liable for the wrongful acts of its conductor in swearing out a warrant of arrest against a passenger on the next day after he was ejected from its train."

These, and other Arkansas cases, are cited and quoted from in *Dickinson* v. *Muse,* 135 Ark. 76, 204 S. W. 609, where we held:

"The liability of a railroad company on account of an unlawful arrest and imprisonment by the procurement of its conductor is limited to what is said and done by its conductor at the time the passenger is being ejected by him under his authority, or for only those things said and done that are so closely associated with the act that they may be regarded as a part of the act."

The last announcement of our court on the subject is in the case of *Fort Smith & Van Buren District* v. *Kidd,* 153 Ark. 489, 241 S. W. 374, where we said:

"In the Dobbins case, as well as in the later cases which cite and follow it, it is made clear that a carrier is not liable for the action of its employees in authorizing arrests and prosecutions of persons who have been ejected or refused passage. But if the passenger is

ejected by being arrested then the carrier is liable for the action if the arrest itself is unauthorized.''

3. We deem it unnecessary to comment at length upon each of the instructions that were given by the trial court. Suffice it to say the charge of the court as a whole submitted the issues of fact which the testimony tended to prove in conformity with the law as declared above and as announced in former decisions of this court. In granting appellant's prayer for instruction No. 5 as modified, and prayer for instruction No. 7 without modification, the court in effect told the jury that, if the appellee was arrested by the officer after she had voluntarily alighted from the car, their verdict should be for the appellant. And, in appellee's instructions 4 and 5, which were modified and given by the court, the jury were told in effect that, if the appellant's conductor-motorman caused the arrest and imprisonment of the appellee, that is, deprived the appellee of her liberty by causing her arrest on, and taking her from, the appellant's car, the appellant would be liable to the appellee in damages. These instructions correctly submitted the crucial issue in the case.

The court did not err in modifying appellant's prayer for instruction No. 5 by striking therefrom the words ''or was voluntarily leaving,'' nor in refusing appellant's prayer for instruction No. 6, for the reason that, if appellant's conductor-motorman caused the appellee to be arrested while she was on appellant's car, after the same had stopped at 5th and Main, where the appellee intended to debark, this was necessarily tantamount to an ejection of the appellee from appellant's car, because it prevented her from voluntarily leaving the car. If the conductor-motorman caused her to be arrested while on the car and to leave the car, not of her own free will and accord, but in custody of the officer, this was, in legal effect, nothing more nor less than a method adopted by the conductor-motorman in ejecting appellee from appellant's car. Therefore it would have tended to confuse and mislead the jury if they had been allowed to deter-

mine whether or not the arrest of appellee while on appellant's car was a method of ejecting her from the car. As already stated, if she was arrested under the orders of the conductor-motorman while on the car, after the car had reached the place where she intended to debark, such arrest was necessarily a method of ejecting her from the car.

The jury found that appellant's conductor-motorman caused the appellee to be arrested while on appellant's car, that he was acting within the scope of his authority in making the arrest, and that this was the method employed by the appellant's conductor-motorman to eject appellee from appellant's car, and that the method thus employed, under the facts, was unlawful. The verdict of the jury on the controverted issues of fact is conclusive here.

4. The court did not err in permitting the appellee to show that she was acquitted by the municipal court of the charge on which she was arrested. This was relevant testimony on the issue as to whether or not the arrest was unlawful and on the measure of damages necessarily incident to and proximately resulting from the arrest. See *Dickinson* v. *Muse, supra.*

5. The appellant contends that the verdict was excessive. The undisputed testimony shows that the appellee said nothing whatever that was calculated to cause a disturbance or breach of the peace on the car. The appellee's companion was the one that used the profane and offensive language calculated to produce a breach of the peace. The undisputed testimony likewise shows that neither the appellant's conductor-motorman nor the officer who made the arrest used any offensive or abusive language toward the appellee. The conductor-motorman testified that he pointed to appellee's companion as the one who was creating the disturbance. The officer who made the arrest testified that the conductor-motorman told him that the colored people were raising a disturbance, and that he pointed them out to witness. Therefore, it is uncontroverted that the only damage

to the appellee was the humiliation of being arrested while on appellant's car, and, as a proximate result thereof, being taken before the municipal court, where she was acquitted. The court only authorized the jury, if they found for the appellee, to return a verdict for such sum as would compensate her for the humiliation she may have suffered by reason of her arrest. The jury were not authorized, under the instruction of the court, to return a verdict for exemplary or punitive damages.

In the case of *L. R. Ry. & Elec. Co.* v. *Dobbins, supra,* the verdict was for $500 compensatory and $250 exemplary damages, and we held, under the facts of that case, that the verdict was not excessive. In that case the conductor caused the plaintiff to be arrested, and he was carried to the police station, just as the appellee was in the present case. But, in that case, in addition to the arrest, the conductor subjected the plaintiff to other humiliations, insults and indignities in the presence of his family and friends. The insults began at the Rock Island depot and were repeated at Main and Markham Streets. In that case we said: "In view of the duty of street-car companies to protect their passengers from insults and injuries, especially at the hands of its servants and employees, the verdict was not excessive." So we say here, in view of the duty of street-car companies toward their passengers, as outlined by the authorities cited above, the appellee should be allowed to recover very substantial compensatory damages for the humiliation and insult to her necessarily involved in her arrest on the street car at 5th and Main, which, as a matter of common knowledge, is one of the busiest and most crowded corners in the entire city of Little Rock. The arrest at such a place and transport by police patrol to the municipal court necessarily subjected the appellee to the observation of many people and called their attention to the fact that she was being placed in the attitude of one arrested as a criminal. The jury have found upon sufficient evidence that the proximate cause of this injury and resultant damage to the appellee was the conduct of

appellant's conductor in having appellee arrested while she was a passenger on appellant's car.

It occurs to us, under all the facts stated, that the verdict of the jury is not excessive. The judgment is therefore affirmed.