THE KROGER GROCERY & BAKING COMPANY v. WALLER.

4-7673                                    189 S. W. 2d 361

Opinion delivered June 18, 1945.

*Ernest Briner* and *Owens, Ehrman & McHaney,* for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

McHANEY, J. This is an action by appellee against appellants, Kroger Company and Orie Houpt, the latter being at the time hereinafter mentioned manager of the former's meat market in its store at Hot Springs, Arkansas, to recover damages for false imprisonment. The

complaint alleged that, on November 15, 1943, the appellants unlawfully, maliciously and wantonly caused her to be deprived of her liberty and imprisoned in the city jail at Hot Springs for about five hours, "thereby causing plaintiff to suffer considerable mental anguish and humiliation, and to suffer considerable financial loss as a result of diminished earning capacity." Judgment was prayed in a large sum for both actual and punitive damages. The answer of appellants was a general denial and a plea of good faith and the existence of probable cause for any action taken by Houpt as a bar to the action.

Trial resulted in a verdict and judgment against both appellants for $2,500 actual and $2,500 punitive damages, or a total of $5,000. This appeal followed.

The facts, briefly stated in the light most favorable to appellee, are as follows: Appellee, a dramatic actress whose home is in New York City, was a visitor in Hot Springs. She arrived there October 29, 1943, was living at the home of Mrs. Elizabeth Parkin and was taking the baths for arthritis. On November 15, after taking a bath, and on her way home, she entered the store of appellants where she bought 37 cents worth of liver from Houpt at the meat market. She paid the ration points to him, but the price for the liver had to be paid to the cashier at the check stand. The price tag was attached to the package of liver by paper adhesive tape, and she says she removed this tag and put it in her pocket, holding the package of liver in her hand, saw some bananas she wanted, got them and handed them to the girl at the check stand to be weighed and was told they cost 12 cents, which amount she paid, walked out and completely forgot to pay for the liver. She was stopped on the outside by appellant, Houpt, and another, and Houpt told her she forgot to pay for the meat, which she admitted and immediately took out her purse, offered to pay for it by trying to give him a $1 bill which he refused to take, and he insisted that she go back in the store and pay the cashier which she refused to do. She said both men took hold of her arms and tried to drag her back into the store. She said she handed Houpt the money and he refused it, she handed him the meat, and he refused it, and

she took it out of her bag and threw it on the ground, "and I says, 'very well,' and as I was about to leave I had this on my arm (indicating her large handbag), and he says, 'Well, I am going to see what you got in there,' and he snatched my bag away from me." She said the handbag contained an apple and an avocado which she brought from her home that morning, the bananas she just bought and her ration books. She left, and on the way home, about three blocks from the store, a car driven by a city police officer, Young, with Houpt on the front seat and another man referred to by her as a bondsman pulled up by her. Young told her to get in the car, that the chief wanted to see her, she declined the invitation to get in and they, Young and Dodd, forced her to get in. She was taken to the police station, was questioned and kept there for about five hours, though not locked up, and charged with petit larceny, for stealing meat and fruit. She was photographed and finger printed. She was released about 5 p. m. when Mrs. Parkin went down and made her bond. She was tried in the municipal court the next morning, convicted and fined $25 and costs. On appeal to the circuit court, she was acquitted. In his argument to the jury for her acquittal in the circuit court, her counsel, according to one of the jurors and the judge who presided at the trial, stated that all she wanted was to clear her name of the charge against her, and that there would be no damage suit. This present suit was brought at Benton, in Saline county, shortly thereafter.

For a reversal of the judgment it is first contended that as to appellant, Kroger Company, it is not liable to appellee, regardless of what may be the decision as to Houpt. We cannot agree with this contention, because the course pursued by Houpt as outlined above was taken in the course of his employment. He undoubtedly had the right to stop appellee on the sidewalk outside the store and to ask her if she had not forgotten to pay for the meat, but when she admitted that she had forgotten it and offered to pay him therefor or to return the meat, the jury had the right to determine his good faith or the want of probable cause in his refusal to accept the money or the meat and in demanding that she return to the

check stand and pay the cashier. We think it fairly inferable from the evidence that Houpt either called the police or had them called by some other employee, since they showed up at the store shortly after appellee's departure, and that he voluntarily accompanied them in pursuit of her to aid them in her arrest by at least identifying her. She was forced into the automobile, taken to the police station with them where she was charged with larceny, and where she was detained for about five hours, questioned, photographed and finger printed. This constituted a continuous series of events caused by Houpt, and we think it would be purely technical and without substance to hold that Houpt was not acting within the scope of his authority. Cases cited by appellant, such as *Ark. Central Power Co.* v. *Hildreth,* 174 Ark. 529, 296 S. W. 33, are to the effect that a railroad or street car company is not liable for the acts of its conductor in causing the arrest of the passenger after the passenger's voluntary departure from the car, are not in point. "But," as said in *Ft. Smith & Van Buren Dist.* v. *Kidd,* 153 Ark. 489, 241 S. W. 374, "if the passenger is ejected by being arrested then the carrier is liable for the action if the arrest itself is unauthorized." Practically all the previous cases are cited in the Hildreth case, which affirmed a judgment for false imprisonment against the company. See, also, *Mo. Pac. R. R. Co.* v. *Yancey,* 178 Ark. 147, 10 S. W. 2d 22. We, therefore, conclude that a question of fact for the jury was made as to the liability of both appellants.

The court erred, however, in submitting to the jury the question of punitive damages, as it did in instruction No. 5 requested by appellee. It is well settled in this state that exemplary or punitive damages will not be awarded for negligence alone, however gross. *Mo. Pac. R. R. Co.* v. *Yancey,* 178 Ark. 147, 10 S. W. 2d 22, and cases there cited, where it was said: "The general rule is that exemplary or punitive damages will never be allowed where the false imprisonment was brought about in good faith, without malice in fact or in law, and there is no element of wantonness or recklessness on the part of the party making the arrest." Tested by this rule we

find no evidence in this record to support an award for such damages. Houpt did not, in fact, make the arrest, but was present with the officers to identify appellee. He pointed her out to them as the person who stole the meat. It is conceded by counsel for appellee that, since she walked out without paying for the meat, "Houpt had a perfect right to stop her and demand payment or a return of the meat." This being true, it is difficult to perceive that what he subsequently did was done maliciously, willfully or wantonly. This error, however, may be cured by reversing this part of the judgment and dismissing the action for punitive damages.

We think the court also committed error in instruction No. 4, given at appellee's request, as follows: " 'You are instructed that in order to justify an arrest without a warrant for a misdemeanor, the arresting officer or the person causing the arrest must determine at his peril whether an offense has been committed or not. In other words, a misdemeanor must have actually been committed to justify an arrest without a warrant.

" 'So, if you find from a preponderance of the evidence herein that defendant, O. C. Houpt, while in the employ of the defendant, Kroger Grocery & Baking Company, and while acting within the scope of his authority and in the furtherance of his employer's business, caused the arrest of plaintiff for a misdemeanor without a warrant; then you are told that the defendants can justify such arrest only by showing that plaintiff actually committed a misdemeanor.' "

The vice in this instruction is the requirement that appellants "can justify such arrest only by showing that plaintiff actually committed a misdemeanor." Such is not the law. Of course, had she been convicted in the circuit court, such conviction would have been an absolute defense as being conclusive of probable cause. But the converse of that proposition is not true. If the jury should find that Houpt acted in good faith, with reasonable grounds, not only in stopping her and asking her to return into the store and pay for the meat (and it is conceded that he had a right to do this), but in going with

the officers who sought to apprehend her and in going to the police station with them, this would be probable cause and no action would lie against appellants. We so held in *Mo. Pac. R. R. Co.* v. *Quick,* 199 Ark. 1134, 137 S. W. 2d 263, where we held as a matter of law that there was probable cause, which defeated the action for false arrest. We there said: "The case at bar turns on the good faith of those charged with having falsely arrested appellee. Our view is that there was probable cause for believing appellee was attempting to take property from the railroad yard." A judgment for $4,000 in that case was reversed, and the cause dismissed. Instruction No. 4 was not specifically argued in the brief of appellants, but the question of probable cause with which it dealt was argued, and we consider the instruction with such argument. The whole question turns on the good faith of Houpt in doing what was done, and the majority is unwilling to say, as a matter of law, that he did act all the way through in good faith, and that he, therefore, had probable cause.

For the error in submitting the question of punitive damages, the judgment is reversed, and the action for such damages is dismissed. For the error in said instruction No. 4, the judgment is reversed, and the cause remanded for a new trial.