## WAL-MART STORES, INC.
### *v.* Katherine YARBROUGH

84-98                                          681 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered December 21, 1984
[Rehearing denied February 25, 1985.*]

*HICKMAN, HAYS, and NEWBERN, JJ., would grant rehearing.

*J. L. Hendren,* for appellant.

*Taylor, Vandergriff & Morris,* by: *William T. Morris,* for appellant.

KATHLEEN BELL, Special Chief Justice. On March 19, 1980, at the behest of Mr. Archie Caudle, Assistant Manager of the Wal-Mart Store, the Appellee was arrested for shoplifting. The Appellee was tried in the Municipal Court of Fort Smith and was acquitted for the charge. She then initiated an action for false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

At the conclusion of the Appellee's case, the Appellant moved for summary judgment on the issue of punitive damages and for directed verdicts as to the issues of false arrest and intentional infliction of emotional distress and denied the other motions made by the Appellant. These motions were renewed by Appellant after both sides had rested and were denied by the trial court.

The jury awarded the Appellee $850 compensatory damages and $20,000 punitive damages. The Appellant moved for Judgment N.O.V. and for a new trial. The trial court denied those motions and this appeal then ensued. Jurisdiction in the court is pursuant to Rule 29(1)(o). We affirm.

The facts in this case, viewed most favorably to the Appellee, are that on March 19, 1980, the Appellee was shopping in the Appellant's Towson Avenue store in Fort Smith, Arkansas for the second time on that date. On this particular occasion she was in the store for the purpose of purchasing dog food. While there she also picked up a coffee mug and a felt tip pen, value approximately fifty-nine cents (59¢). Appellee was observed by a store employee placing the pen on, or partially in, her purse. Assistant Manager Caudle was approached and informed of her actions. Caudle then commenced his personal observation of Appellee. At all times, Caudle was able to see the pen, which was contained in a cardboard package. Caudle observed Appellee for approximately 10-20 minutes, including the time she was in the check-out line paying for the other items. When Appellee was outside the store, she was approached by Caudle. He pointed to the still visible pen and asked if she had paid for it. Appellee told him no she had forgotten, but would return and do so. Caudle, Appellee and another male employee reentered the store. Appellee started in the direction of the check-out counter and was informed by Caudle they had to go to the back. Appellee was accompanied into the store office by Caudle and two other store employees.

Appellee testified at this point that she felt she was detained because of the behavior of Caudle and the presence of the second employee. Caudle testified that the purpose of the second employee was to ensure that Appellee did not bolt and run and that she would not have been allowed to leave the premises voluntarily.

Upon arrival in the office, Caudle immediately phoned the police and then informed Appellee she was under arrest. Appellee insisted to Caudle that she simply forgot she had the pen and was willing to pay for it. She also requested that he telephone a friend of Appellee's, a retail merchant in the area, to verify her good character. Caudle stated that once the decision to stop was made, there was little or nothing the Appellee could have said to change that decision. He testified that he felt it was a good stop and it was the job of the jury to listen to her story and make a decision as to guilt

or innocence. He said he therefore made no effort to believe the statement of Appellee.

The Appellant had an established procedure for the detention, interrogation, and prosecution of shoplifters. That procedure required that the person be interrogated after detention. The personal observation and the interrogation could lead to a decision that the person simply forgot to pay and should be released. The manual further states that the fact an item was not paid for does not necessarily mean a person was guilty of shoplifting.

Even though a part of Caudle's job as assistant manager involved the apprehension of shoplifters, he testified he was not familiar with that procedure and it was not utilized by him. After the stop was made he felt it was his responsibility to proceed with prosecution and it was the duty of the court to determine any other issues.

On the day the matter was set before the Municipal Court of Fort Smith, the City Attorney, Jim Filyaw, was asked by the Appellee's counsel to listen to her version of the incident. Filyaw did so and then approached Caudle with a recommendation to dismiss the charge. Filyaw had questions as to whether Appellee had the intent to steal and stated that he found Appellee to be open and truthful. The decision whether to proceed was left to Caudle. Caudle's response was that once they arrest someone, they prosecute them regardless. The Appellee was tried and found not guilty.

The question the court is initially presented with is the issue of probable cause for the arrest and prosecution of the Appellee. "The test for determining probable cause is an objective one based not upon the accused's actual guilt, but upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty". *Kroger Co. v. Standard,* 283 Ark. 44, 670 S.W.2d 803 (1984); *Malvern Brick and Tile Co. v. Hill,* 232 Ark. 1000, 342 S.W.2d 305 (1961). Unless both the facts and the reasonable inferences to be deduced from those facts are undisputed, this issue is to be submitted to the jury.

The appellant, replying upon *Kroger Co. v. Standard,* supra, contends that the trial court erred as a matter of law in submitting the issues of malicious prosecution and false imprisonment to the jury. This reliance is not well founded. The *Kroger Co.* Court found the Appellant had the benefit of the shoplifting presumption, Ark. Stat. Ann. § 41-2202(2) (Repl. 1977), which arises with the knowing concealment of unpurchased items. Applying, in conjunction, this presumption, Rule 301 of the Arkansas Rules of Evidence and the testimony of the Appellee, the Court held that there was not substantial evidence that Kroger failed to exercise the ordinary caution exhibited by the reasonably prudent merchant. *Kroger Co. v. Standard,* supra at pages 48-49.

Assistant Manager Caudle testified he was able to see the pen at all times during the period he was observing the Appellee. The shoplifting presumption did not arise there and thus, the Appellee did not have to overcome the burden imposed by Rule 301. The Appellant did have probable cause for the initial stop of the Appellee to question her with respect to the pen. However, it can not be held, as a matter of law, that the Appellant thereafter exercised ordinary caution in these circumstances. Once the decision to stop was made, the prosecution of Appellee was automatic, according to Appellant. There was no effort made to listen to, or believe, the explanation proffered by Appellee because there was nothing she could have said that could have changed the Appellant's decision to prosecute. And additionally, the Appellant continued with the prosecution after the recommendation was made by the City Attorney that the action be dismissed.

While those facts, as were all others, were undisputed, they were susceptible to different inferences. The submission of the issues of false imprisonment and malicious prosecution to the jury was entirely appropriate in these circumstances. *Kroger Co. v. Standard,* 283 Ark. at page 47.

The Appellant contends that the issue of punitive damages should not have been submitted to the jury because the facts were undisputed. It is not sufficient that the facts be undisputed. Before a trial judge can decide as a matter of

law, the issue of punitive damages, the reasonable inferences to be deduced from those facts must also be undisputed. In this instance, Mr. Caudle testified that he had no knowledge of the shoplifting procedure enacted by the store and that this procedure was not used by him. It was his belief that any person leaving the store with unpaid for merchandise should be prosecuted and because of that belief, he made no effort to listen to an explanation of the detained individual. And in the fact of the City Attorney's recommendation to dismiss, the decision of the Appellant was to continue with the prosecution. This recommendation had no effect upon Appellant's decision because, once the initial decision to prosecute was made, it was not reconsidered.

The inferences to be deduced from those facts are not undisputed. The trial court could not, as a matter of law, have decided the issue of punitive damages.

The Appellant also contends that the Appellee was not detained because she returned to the store voluntarily and never asked to leave. The Appellant is apparently negating the testimony of Mr. Caudle. He testified that he had Appellee guarded from the time she was stopped outside the store until the time the police arrived. The Appellee was led into an office and guarded by employees of the Appellant. The confinement of Appellee within the boundaries determined by the Appellant was complete. Restatement of the Law of Torts (2d) § 39 (1965).

Appellant also argues that two of the jury instructions given by the court were erroneous and that the trial court erred by its refusal to give Appellant's requested instruction. However, the Appellant made only general objections to the instructions given by the court. A general objection is insufficient to present the issue on appeal. Rule 51, Arkansas Rules of Civil Procedure.

The Appellant specifically objected to the trial court giving an instruction stating that "malice could be inferred from certain conduct." It was understood by the court that the objection had reference to the court's instruction on punitive damages, derived from AMI 2217 (Court Instruc-

tion 14). On appeal, the Appellant now asserts that AMI 2217 has no application in intentional tort cases, such as this one. This objection cannot be made for the first time on appeal. *Blissett* v. *Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970).

Appellant next contends that the trial court erred in sustaining an objection made by Appellee's counsel during closing argument. During Appellant's closing statement, counsel stated Appellee had alleged Caudle had acted arbitrarily and capriciously because he had not verified Appellee's reputation with Bill Fields as requested by Appellee. Counsel then commented, "I hope the jury will notice that no one has asked the City Attorney to check with Mr. Fields or other of plaintiff's witnesses regarding the reputation or character of plaintiff." Appellee's counsel objected, stating this constituted a statement on facts not in evidence, that there was not proof whether the request had been made or not. The Appellant responded that he felt he was entitled to "mention lack of evidence, which could have easily been presented had plaintiff chose to do so."

The court sustained the Appellee's objection. The closing argument was not recorded and this exchange was reconstructed by counsel in chambers.

Control of counsel's argument is within the wide range of discretion exercised by the trial judge. The exercise of that discretion will not be reversed, in the absence of abuse. *Lewis* v. *Pearson*, 262 Ark. 350, 556 S.W.2d 661 (1977); *St. Louis, I.M. & S. Ry. Co.* v. *Earle*, 103 Ark. 356, 146 S.W. 520 (1912).

The exercise of the trial court's discretion here cannot be held to have been an abuse.

The appellant lastly contends that the evidence was insufficient to support the verdicts and the trial court erred in not granting Judgment N.O.V. The standard for substantial evidence is enunciated in *Love* v. *H.F. Construction Co., Inc.*, 261 Ark. 831, 552 S.W.2d 15 (1977). Employing this standard, we can not hold as a matter of law, that "there is no reasonable probability in favor of Appellee's version."

From the testimony of Caudle, the jury could have reasonably inferred conscious indifference to the consequences of his action. Such a finding would sustain a verdict on punitive damages. *Satterfield* v. *Rebsamen Ford Inc.*, 253 Ark. 181, 485 S.W.2d 192 (1972); *Dalrymple* v. *Fields*, 276 Ark. 185, 633 S.W.2d 362 (1982). There was also substantial evidence to support he verdict as to compensatory damages and the decision of the jury will not be disturbed.

Affirmed.

HUBBELL, C.J., not participating.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. With due respect, I take a wholly different view than the majority. Just a few weeks ago we decided *Kroger Company* v. *Standard,* 283 Ark. 44, 670 S.W.2d 803 (1984), on facts fundamentally indistinguishable from these. In *Kroger,* the customer admittedly was about to leave the store without paying for a ham when he was stopped in the store by the store manager. Here, the customer admittedly left the store without paying for a 59 cent felt tip pen. In both cases, the customer's protestations of a lack of intent were supported by the jury's verdict, yet we held in *Kroger* that probable cause was present as a matter of law but in this case is an issue for the jury to decide on what seems to me even firmer footing.

Part of the problem may be due to the fact it is inconceivable anyone would steal an insignificant item when they have the money to pay for it, yet experience teaches that some do just that, deriving a satisfaction not readily understandable. However that may be, the municipal judge gave Mrs. Yarbrough the benefit of the doubt and acquitted her of any criminal intent. He may have been right in his judicial function. But he may have been entirely wrong with respect to Mrs. Yarbrough's actual state of mind at the time of the incident. Only Mrs. Yarbrough knows what she intended. The point is, the fact that the customer in this case was acquitted of a criminal charge dependant on proving intent by a much heavier burden, i.e. beyond a

reasonable doubt, ought not to give rise to civil liability for damages when by her own admission she left the store without paying for the merchandise and it was at least partially concealed in her purse. The pen in a container was stuck into a pocket of her purse with part of it exposed.

It seems to me two things are wrong here: the customer is permitted to profit as a result of what was, at best, her own carelessness or, at worst, her own dishonesty, and no one can say with certainty which it was. She admitted deliberately putting the item in or on her purse. Secondly, the merchant is left in an impossible position in such cases. No matter how reasonable his belief is that an offense has been committed against his property, if the customer can convince the fact finder in a criminal case that he or she had no actual intent to steal, or is able to cast even a *reasonable doubt* on that issue, the merchant is then in peril of civil suit for both compensatory and punitive damages. Further the majority decision for all practical purposes means a merchant cannot have arrested someone who leaves his store with merchandise without paying for it. That simply ought not to be the law and in *Kroger* we had the forthrightness to say so. And *Kroger* v. *Standard,* is not the only case in which this court has held probable cause to exist as a matter of law, notwithstanding a jury verdict to the contrary. See *Missouri Pacific Railroad Co.* v. *Quick,* 199 Ark. 1134, 137 S.W.2d 263 (1940).

My disagreement with the punitive damages award is even more pronounced. Where is there any evidence of malice, or of wantoness, or an indifference to the consequences of such magnitude that malice can be inferred? I submit it is non-existent. The most that can be said of the manager's handling of the incident is that he was negligent in failing to be more familiar with the manual on dealing with suspected thefts, but even if that could be said to be gross negligence, it still falls below the requirements of the law with respect to punitive damages. *Kroger Grocery and Baking Co.* v. *Waller,* 208 Ark. 1063, 189 S.W.2d 361 (1945).

Having observed the customer leave the store without paying for the goods, the manager handled the incident in a

thoroughly responsible fashion. He asked her quietly to come to the office, where he called the police. He did not accuse her, nor berate or embarass her in front of customers, he simply did what he believed to be his duty without any unnecessary recrimination to the customer, and unless we can say his refusal to believe her claim that she had meant to pay for the item was maliciously inspired, or wantonly executed, the punitive damages award ought, in good conscience, to be remitted in full. This is precisely what we did on almost identical facts in *Kroger* v. *Waller, supra.*

. If a merchant does not have probable cause to have a person arrested who secrets an item and leaves a store without paying for it, then merchants are simply helpless to protect their property from shoplifters, lest they become subject to suit for false arrest in every such instance.

What is probable cause? The test for determining probable cause is an objective one based not upon the accused's actual guilt, but upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty. *Malvern Brick & Tile Co.* v. *Hill,* 232 Ark. 1000, 342 S.W.2d 305 (1961). If it did not exist in this case, it doesn't exist.

HICKMAN, J., joins in this dissent.